**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com

Counsel for Intervenor SHAILESH PATEL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAILESH PATEL, investor and shareholder, | **CASE NO.: 4:23-cv-02064-YGR** |
| Intervenors, | |
| v. | **INTERVENOR COMPLAINT FOR DAMAGES** |
| ALINOR HOLDINGS, INC. d/b/a ONRIVA; JAYESH PATEL; DEVESH PATEL; VIMAL PATEL. | |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

Intervenor SHAILESH PATEL, alleges the below against DEFENDANTS JAYESH, DEVESH AND VIMAL PATEL, as well as ALINOR HOLDINGS, INC.:

**PARTIES**

1.  Intervenor SHALIESH PATEL is an Intervenor and shareholder, with residence in 2222 W Skelly dr., Tulsa OK 74107 with phone number 918 361 5955.

2.  Plaintiff PROFITPAY TECHNOLOGIES, INC. ("PROFITPAY") is a corporation organized under the laws of the State of Delaware, having a principal place of business at 2603 Camino Ramon, Suite 200, San Ramon, CA 94583.

3.  Plaintiff TANMAY KAR is the Chief Executive Officer and Chairman of the Board of PROFITPAY.

4.  Defendant ALINOR HOLDINGS, INC., d/b/a Onriva is a corporation organized under the laws of the State of Delaware, having a principal place of business at 1065 E. Hillsdale, Suite 215, Foster City, CA 94404.

5.  Defendant JAYESH PATEL is an individual who is also the CEO of Athena Hospitality Group, CEO and Founder of a newly formed fundraising platform Monriva Capital residing in either Kentucky or Tennessee, a board member and shareholder of PROFITPAY and, on information and belief, a principal at ALINOR HOLDINGS, INC. JAYESH PATEL is also the Managing Member of all the LLCs which are used as the vehicles to secure investment from many small individual Intervenors such as the INTERVENOR SHAILESH both in PROFITPAY and ONRIVA.

6.  Defendant DEVESH PATEL is an individual who is also the nephew of JAYESH PATEL and Chief Operating Officer of Athena Hospitality Group, and Co-founder of newly formed Monriva Capital and residing Cincinnati, Ohio and a board member of PROFITPAY.

7.  Defendant VIMAL PATEL is an individual who is also the Chief Compliance

INTERVENOR COMPLAINT FOR DAMAGES

Officer of Athena Hospitality Group, and Co-founder of newly formed Monriva Capital and residing in this district and a board member of PROFITPAY.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1332.

9.      This Court has personal jurisdiction over the parties in that they reside and/or maintains regular and established places of business in this District.

**FACTS**

10.      Intervenor SHAILESH PATEL has substantial investments made in PROFITPAY TECHNOLOGIGIES, INC., and is afraid that DEFENDANTS have ill-advised in bad-faith with ill-motives not disclosed the sale and purchase of PROFITPAY TO ONRIVA.

11.      For more than 24 years, Plaintiff TANMAY KAR ("KAR") has been a highly accomplished entrepreneur, having been Chief Executive Officer and Chief Financial Officer at multiple successful companies backed by prominent venture capital firms.

12.      In or around October 2021, KAR was approached by a C-suite executive recruiter about a potential position at PROFITPAY.

13.      The recruiter told him that PROFITPAY had about 75 people, revenue growing from about $350,00 per month to $1.0 million per month to $10 million a month and was "about to secure a large funding round" and was "looking for a seasoned finance executive to spearhead the company's financial future."

14.      KAR was initially hired as CFO of PROFITPAY, but JAY's intent was to induce KAR to become CEO, knowing that the former CEO and founder of PROFITPAY was likely going to jail after killing three people in a DUI accident wherein the former CEO even fraudulently reported the accident as if it was during a business work and asked the insurance company to pay $2.0 million to help settle the case .

15.      The Company's former CEO where Defendant JAYESH PATEL ("JAY") was the second largest shareholder and managing member of the 3 LLCs with about 225 Intervenors, such

3

as the INTERVENOR SHAILESH, supplied false information to the recruiter and to and KAR that PROFITPAY had closed an investment for $50 million, putting PROFITPAY at a $700 million valuation, when in fact the company barely had money to meet payroll.

16.     Thus KAR, in reliance on the misrepresentation by the former CEO with active participation of JAY as evidenced from the Newsletters that he has sent to all Intervenors, such as the INTERVENOR SHAILESH accepted the position of CFO on the understanding that he would be receiving a 4% ownership interest in a firm that would have $53 million in the bank and would have a $700 million valuation.

17.     In the first ever in-person meeting right after joining the Company that happened in a restaurant in San Bruno, JAY never mentioned anything about the Company's dire situation not even disclosed that the former CEO had an accident instead cheered on the possible valuation numbers that the former CEO was sharing. Few days later when once KAR learnt first-hand from the former CEO that he was hired to be the CEO because of his accident and he realized the dire state of PROFITPAY's finances, JAY turned around putting all the blame on the former CEO, acted completely innocent, and pleaded with him to remain as CEO and help to take control from the former CEO and turn the company's business around, purchased certain assets together with VIMAL at 50% discount while promising to personally invest up to $1 million of his own funds into PROFITPAY to help achieve these objectives. Defendant VIMAL PATEL ("DEVESH") also promised to invest additional funds in PROFITPAY.

18.     Ultimately, however, JAY and VINCE failed to live up to their promise and did not invest further capital in PROFITPAY as agreed as part of the restructuring effort while ousting the former CEO. Despite agreeing to invest $1.0 million regardless of the Company's progress and another $1.0 million based on the Company's progress, not only did they not invest but they forced KAR to pay $100,000 to buy out one single individual Intervenor who was not happy. By having a Board that included three related party KAR had no choice but to agree.

19.     In the ensuing months, KAR managed to turn around PROFITPAY's business, replacing the former CEO, buying back the former CEO's shares for the company, reducing more

than $3 million in liabilities to nearly zero, replacing the employees, shutting down non-performing code, moving customers to a different platform, and finally achieving profitability for PROFITPAY while running the business as a sole employee while dealing with a seriously stressful and volatile environment created by the former CEO. The Company's financials were not kept in order, taxes could not be filed because of the lack of financial records, and dealing with back taxes which were not paid to the State.

20.     Meanwhile, JAY was engaged in a Ponzi scheme at ALINOR HOLDINGS, INC. d/b/a ONRIVA ("ONRIVA").

21.     JAY, who in conversations has purported to be a "billionaire," "launching a multi-billion-dollar fund," and taking ONRIVA public in a matter of months has, in fact, been operating a fraudulent scheme to obtain investment at ONRIVA—and is attempting to gain control of PROFITPAY's assets in furtherance of the scheme. JAY, VIMAL and DEVESH have launched a fundraising platform Monriva Capital suggesting to raise $1.0 billion in late 2022 to use their successful scheme of raising money from a lot of innocent Intervenors. JAY even invited KAR to a party hosted by him in Nashville, Tennessee in October 2022 and attended by ONRIVA executives and all the individual Intervenors suggesting as if the investment banks were going to invest and take the Company public right after making him and others Billionaires. KAR could not attend the function for personal reasons.   JAY claimed that to be a huge success including launch of his fund Monriva Capital which from the look of it is a platform to raise capital.

22.     ONRIVA has been in business for approximately 8 years with no stable market team and continues to fail to deliver on the promises that it has made to its Intervenors. Despite repeated requests by KAR neither ONRIVA nor JAY have provided basic financial diligence material such as GAAP compliant financial statements. JAY initially floated the idea that ONRIVA was going to invest in PROFITPAY which derailed KAR's focus on building the business per a plan that he proposed and even communicated to all the shareholders, such as the INTERVENOR SHAILESH. Subsequently without involving KAR in any negotiation with

JAFRI, CEO of ONRIVA Jay served KAR a draft term sheet with transaction terms while suggesting that ONRIVA would buy the assets for about

660,000 shares each priced at about $50 a shares, 5 times more than the price at the last round of about $10. JAY discussed with KAR a few times on how the shares were to be distributed and KAR prepared and shared a model both with JAY and the CFO of Onriva. JAY kept KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a year, would go public and provide 5-10x exit to the Intervenors at the very least while pointing out to the

success of TRIP ACTIONS, which is about $12 billion dollar valuation while doing $1.0 billion in revenue. Following a half a day long meeting in the presence of JAY, VINCE, DEVESH and the CEO, CTO and CFO of ONRIVA and subsequent meeting with ONRIVA's CTO, KAR started realizing that ONRIVA's revenue was under $1.0 million for 2022 and may not even be $2-3 million in 2023 as the Company is going through a leadership crisis in the go to market team. CTO of ONRIVA stated that JAFRI, the CEO do not like to talk about the revenue number but the top line bookings as Sales which to KAR was creating an impression that revenue is 20-30 times higher given the current business model generates 4-5% of revenue or even less from the airline and hotel bookings. Over the course of the following few weeks KAR was convinced that ONRIVA was simply hiding the truth. Getting financial statements and projections are simple requests in a transaction to establish the value of the receipts. JAY shared revenue run rate numbers of Onriva in a whatsapp message which were overstated by 20 times not 20%. He further had a 1:1 call with Jay to express his concerns about ONRIVA and corrected JAY on the revenue numbers. KAR was struggling how a company that just launched in a hyper competitive travel space with $1-2 million revenue be valued at 1,000 times prior year revenue, 400-500 times current revenue run rate and possibly 300-400 times of the achievable revenue for this year while suggesting that this could exit at billions of dollars of valuation through a purchase or acquisition. any company on this earth can go public.

23. ONRIVA has taken more than $45 million from approximately 400 Intervenors, all the

while promising them lucrative exits at absurd returns on investment, from 10-100x and is currently using this acquisition to help artificially increase the valuation with no real success in terms or the Company's maturity in products and revenue..

24.     JAY and ONRIVA have claimed the valuation to increase to at least $1 billion valuation in the near term for ONRIVA in next few months, with no basis except for the fact that JAFRI is supposed to be putting his own money to his Company at a higher valuation so that they could use that as a basis to raise money at even higher valuation from retail Intervenors including sourcing capital by engaging investment bankers.

25.     Sophisticated venture capital firms have avoided investing in ONRIVA. Rather, JAY and ONRIVA have focused on swindling less sophisticated Intervenors.

26.     JAY and ONRIVA have operated a Ponzi scheme whereby they have continuously sought more and more investment first in PROFITPAY and then in ONRIVA, at higher and higher valuations, in order to provide impatient Intervenors an "exit," while continuing to perpetuate the scheme,

27. On information and belief, VIJAD JAFRI, a principal at ONRIVA, has sold his personal shares held in his previous Company Mondee, Inc.to JAY and subsequently in lieu of raising $35 million funds from 400 or so individual Intervenors provided Jay with significant shares in ONRIVA whereby according to JAY he owns now 13% of the Company's shares.

28.     JAY has used cap table with fabricated spreadsheets showing ludicrous $8 billion exit scenarios to induce Intervenors to raise capital at PROFITPAY and used hyper inflated financial projections possibilities in the News Letters to raise capital to ONRIVA, when the company lacks stable corporate governance and lacks assets that would support such a valuation.

29. On April 16, 2023, JAY called a Board meeting wherein he came prepared with other two related Board members to dictate the terms of the acquisition to KAR and have him approve the resolutions without having any discussion whatsoever while denying to provide any basic diligence material about ONRIVA such as basic financial statements and on or about April 18, 2023, JAY purportedly caused PROFITPAY to enter into a so-called "Asset Purchase

Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY.

30. However, JAY fraudulently manipulated the proposed Asset Purchase Agreement in order to acquire PROFITPAY on unduly favorable terms to ONRIVA and himself, while pretending that the shares will be distributed ratably per the Cap table shared with both Onriva and him weeks before, which terms dilute the value of PROFITPAY's other Intervenors, including KAR, by 80%.

31. JAY, as a principal of both ONRIVA and PROFITPAY, has attempted to effectuate a highly self-interested transaction, to the detriment of PROFITPAY, its Intervenors, and such as the INTERVENOR SHAILESH, a shareholder of PROFITPAY, and his fiduciary duty thereto.

32. JAY, and the other board members of PROFITPAY, did not comply with the requirements of CORP. CODE § 310(b).

33. JAY, and the other board members of PROFITPAY, did not seek approval for the Asset Purchase Agreement from non-conflicted Intervenors and/or shareholders of PROFITPAY.

34. Where transaction between two corporations benefits one corporation at expense of the other corporation, and especially if it personally benefits majority directors, it should be set aside. *Remillard Brick Co. v. Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 241 P.2d 66.

35. The Asset Purchase Agreement is a conflicted and self-interested transaction that harms PROFITPAY's Intervenors, such as INTERVENOR SHAILESH and the company itself, and is intended solely to provide assets to ONRIVA to support JAY's ongoing ponzi scheme at ONRIVA.

36. As such, **the Asset Purchase Agreement is void and/or must be set aside.**

**FIRST CLAIM FOR RELIEF**

**(Fraudulent Inducement)**

37. Intervenors refer to and incorporate the foregoing paragraphs as if fully set forth herein.

1

2          38.     Intervenor SHAILESH was fraudulently induced by Defendant JAY to accept a

3    position at PROFITPAY, based on misrepresentations about the financial status of PROFITPAY

     and the resulting sale and purchase to ONRIVA.

4          39.     JAY knew the true financial status of PROFITPAY at the time he made those

5    misrepresentations and intended for Intervenor SHAILESH to rely on those misrepresentations in

6    order to induce him to INVEST in the corporation.

7          40.     Intervenor SHAILESH justifiably relied on JAY's misrepresentations and, as an

8    outsider, could not have known the true financial status of PROFITPAY at the time he was hired.

9          41.     As a result of JAY's fraudulent misrepresentations, Intervenor SHAILESH suffered

10   damaged in an amount to be determined at trial according to proof.

11                                   **SECOND FLAIM FOR RELIEF**

12                                       **(Breach of Fiduciary Duty)**

1          42.     Intervenors refer to and incorporate the foregoing paragraphs as if fully set forth

14   herein.

15         43.     Defendants JAY, DEVESH and VIMAL are directors of PROFITPAY.

16         44.     Defendants JAY, DEVESH and VIMAL owe PROFITPAY and its shareholders,

17   such as Intervenor SHAILESH, a fiduciary duty of the highest good faith.

18         45.     Defendants JAY, DEVESH and VIMAL have orchestrated a purported Asset

19   Purchase Agreement, purporting to acquire PROFITPAY and its assets on behalf of ONRIVA,

20   with unduly favorable terms to themselves harming Intervenor SHAILESH.

21         46.     The Asset Purchase Agreement provides for the purchase of PROFITPAY on terms

22   that dilute the value of other shareholders' interests in PROFITPAY by 80% was not shared with

23   Intervenor SHAILESH.

24         47.     Defendants JAY, DEVESH and VIMAL are shareholders of ONRIVA, such as

25   Intervenor SHAILESH.

26         48.     As such, the purported Asset Purchase Agreement is a flagrantly self-interested and

27   conflicted transaction; and not disclosed to Intervenor SHAILESH.

28

49.     Defendants have not complied with Corp. Code. § 310(b).

50.     As a result of the purported Asset Purchase Agreement, PROFITPAY and its shareholders, including Intervenor SHAILESH have been harmed.

51.     PROFITPAY and its shareholders, including Intervenor SHAILESH have suffered damages proximately caused by Defendants' breaches of their fiduciary duty.

///

### THIRD CLAIM FOR RELIEF

### (Breach of Contract)

52.     Intervenors refer to and incorporate the foregoing paragraphs as if fully set forth herein.

53.     The parties agreed that ONRIVA would acquire PROFITPAY on terms that were fair to PROFITPAY and its shareholders, including KAR and Intervenor SHAILESH. However, the latter do not know about this arrangement, as well as have never seen the executed Agreement/

54.     However, Defendants JAY, DEVESH and VIMAL unlawfully purported to pass a resolution on behalf of PROFITPAY that violated this agreement, giving JAY 80% of the value and diluting the value received by the other PROFITPAY shareholders, including KAR, by 80%, and Intervenor SHAILESH.

55.     Defendants' conduct constitutes a breach of the agreement.

56.     Intervenors have suffered damages proximately caused by Defendants' breach.

### FOURTH CLAIM FOR RELIEF

### (Fraud)

57.     Intervenors refer to and incorporate the foregoing paragraphs as if fully set forth herein.

58.     Defendants have repeatedly supplied false information to KAR and Intervenor SHAILESH, as well as to Intervenors and shareholders of PROFITPAY, such as the INTERVENOR SHAILESH in order to induce them to invest additional capital in the company.

10

INTERVENOR COMPLAINT FOR DAMAGES

59.     Defendants falsely stated to Intervenors, such as the INTERVENOR SHAILESH directly and through press releases, that PROFITPAY had been acquired, when in fact the company merely had a domain name change while the previous CEO was being criminally charged for killing three people in a DUI.

60.     Defendants falsely stated to Intervenors such as Intervenor SHAILESH that Softbank would be making an investment in PROFITPAY, when they knew that it would not be.

61.     Defendants falsely stated to Intervenor SHAILESH that PROFITPAY would be acquired on fair terms.

62.     Defendants knew their statements were false and intended for Intervenors to rely on their statements.

63.     Intervenors have reasonably relied on Defendants' misrepresentations, and suffered damages proximately caused thereby.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

64.     Intervenors refer to and incorporate the foregoing paragraphs as if fully set forth herein.

65.     Defendants misrepresented the financial status of PROFITPAY and the terms on which PROFITPAY would be acquired to Intervenor SHAILESH.

66.     Defendants lacked reasonable grounds for believing their statements to be true, when they knew or should have known the true financial status of PROFITPAY and the terms on which the purported acquisition by ONRIVA would commence.

67.     Defendants intended to induce Intervenor SHAILESH's reliance on their misrepresentations.

68.     Intervenor SHAILESH did not know the truth of these matters and justifiably relied on Defendants' misrepresentations.

69.     Intervenors suffered damages proximately caused by Defendants' misrepresentations.

1

2                                    **JURY DEMAND**

3                    Intervenors demand a jury trial on all issues so triable.

4

5                                  **PRAYER FOR RELIEF**

6          WHEREFORE, Intervenors pray for relief as follows:

7          A.      Judgment permanently enjoining Defendants from taking possession of

8   PROFITPAY and/or any of its assets;

9          B.      Judgment declaring the purported Asset Purchase Agreement void;

10         C.      Judgment awarding Intervenors general and/or specific damages, including

11  enhanced and/or exemplary damages, as appropriate;

12         D.      Judgment awarding Intervenors all of their costs, including their attorneys' fees,

1   incurred in prosecuting this action;

14         E.      Judgment awarding Intervenors pre-judgment and post-judgment interest; and

15         F.      Judgment awarding Intervenors such other and further relief as the Court may deem

16  just and proper.

17                               **DEMAND FOR JURY TRIAL**

18         Intervenors demand a jury trial on all claims as to which they have a right to a jury trial.

19

20

21  **DATED:  June 13, 2023**                    *Respectfully submitted,*

22                                          **LAW OFFICE OF RESHMA KAMATH**

23                                          */S/ Reshma Kamath*

24                                          _____
                                               Reshma Kamath
25                                          Counsel for INTERVENOR SHAILESH
                                            PATEL
26

27

28

                                              12
                          INTERVENOR COMPLAINT FOR DAMAGES