1
2
3
4
5

**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for Plaintiffs **TANMAY KAR; PROFITPAY TECHNOLOGIES, INC.; JOHN DOE INTERVENORS**

6
7
8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

10

PROFITPAY TECHNOLOGIES, INC.; a
corporation; AND, TANMAY KAR, an individual,

**CASE NO.: 4:23-cv-02064-YGR**

11
12
1

Plaintiffs,

v.

**SECOND-AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES:**

14
15
16

ALINOR HOLDINGS, INC. d/b/a ONRIVA;
JAYESH PATEL; DEVESH PATEL; VIMAL
PATEL; VAJID JAFRI; AND, DOES 3-10,
INCLUSIVE,

**I. FRAUDULENT INDUCEMENT;**
**II. BREACH OF FIDUICIARY DUTY;**
**III. BREACH OF CONTRACT;**
**IV. FRAUD;**
**V. NEGLIGENT MISREPRESENTATION; AND,**
**VI. SECURITIES & INVESTMENT FRAUD.**

17
18

Defendants.

19
20

**DEMAND FOR JURY TRIAL**

21
22
23
24
25
26
27
28

   *TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD, HEREIN:*

## SECURITIES FRAUD COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF

## INTRODUCTION

Pursuant to Section 11 of the Securities Act, Section 12 of the Exchange Act, Section 10(b) of the Exchange Act, and 10(b)(5), and/or 15 U.S.C. § 78u-4(b)(2), Plaintiffs TANMAY KAR, PROFITPAY TECHNOLOGIES, INC., (*hereinafter*, collectively, PLAINTIFFS) allege and purport the below securities fraud and other allegations against DEFENDANTS JAYESH PATEL, DEVESH PATEL, VIMAL PATEL, VAJID JAFRI, as well as ALINOR HOLDINGS, INC./ONRIVA; and DOES 3-10, inclusive:

## PARTIES

1.      Plaintiff PROFITPAY TECHNOLOGIES, INC., (*hereinafter*, "PROFITPAY") is a corporation organized under the laws of the State of Delaware, having a principal place of business at 2603 Camino Ramon, Suite 200, San Ramon, CA 94583.

2.      Plaintiff TANMAY KAR (*hereinafter*, "KAR") is the Chief Executive Officer and Chairman of the Board of PROFITPAY.

3.      Defendant ALINOR HOLDINGS, INC., d/b/a Onriva is a corporation organized under the laws of the State of Delaware, having a principal place of business at 1065 E. Hillsdale, Suite 215, Foster City, CA 94404. ((*hereinafter*, "ONRIVA/ALINOR.")

4.      Defendant JAYESH PATEL, (*hereinafter*, "JAYESH") is an individual who is also the CEO of Athena Hospitality Group, CEO and Founder of a newly formed fundraising platform Monriva Capital residing in either Kentucky or Tennessee, a board member and shareholder of PROFITPAY and, on information and belief, a principal at ALINOR/ONRIVA. JAYESH PATEL is also the Managing Member of all the LLCs which are used as the vehicles to secure investment from many small individual Plaintiffs such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia.*

5.      Defendant DEVESH PATEL (*hereinafter*, "DEVESH,") is an individual who is also the nephew of JAYESH PATEL and Chief Operating Officer of Athena Hospitality Group, and Co-founder of newly formed Monriva Capital and residing Cincinnati, Ohio and a board member of PROFITPAY.

6.      Defendant VIMAL PATEL (*hereinafter*, "VIMAL") is an individual who is also the Chief Compliance Officer of Athena Hospitality Group, and Co-founder of newly-formed Monriva Capital and residing in this district and a board member of PROFITPAY.

7.      Defendant VAJID JAFRI (*hereinafter*, "JAFRI") is the purported owner of ALINOR/ONRIVA.

8.      Plaintiffs are ignorant of the true names and capacity of defendants sued herein as DOES 3 – 10 inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe; and, based thereon allege that each of the fictitiously named defendants are responsible in some manner for the injuries to the Plaintiffs as alleged herein, and that such injuries as herein alleged were proximately caused by such defendants.

9.      Whenever in this Amended Complaint an act or omission of a corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation.

10.      Plaintiffs are informed and believe, and thereupon allege that at all times herein mentioned, the defendants were the agents, employees and/or servants, masters or employers of the remaining defendants and in doing the things herein after alleged, were acting within the course

SECOND-AMENDED COMPLAINT FOR DAMAGES

and scope of such agency or employment, and with the approval and ratification of each of the other defendants.

11.     Plaintiffs are informed and believe; and, thereon allege that each of the factiously named Defendant is responsible in some manner for the occurrences hereinafter alleged, and that Plaintiffs' injuries as herein alleged were proximately caused by the aforementioned Defendants.

## JURISDICTION & VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, 15 U.S.C. § 78a *et seq.*; and 15 U.S.C. § 78u-4(b)(2). Specifically, under the Securities Act, Exchange Act, and Private Securities Litigation Reform Act of 1995 (PSLRA), the Plaintiffs allege the defendants engaged in and committed securities fraud, amongst other things.

## FACTUAL BACKGROUND

13.     Plaintiffs TANMAY KAR, INVESTORS, and, SHAREHOLDERS*, inter alia*, have substantial investments made in PROFITPAY TECHNOLOGIES, INC., and have detrimentally relied on DEFENDANTS' reckless misrepresentation with intent to deceit and fraud in not disclosing the sale and purchase of PROFITPAY TO ALINOR/ONRIVA after Defendant raised over $625,000 in capital from each of the INVESTORS, and SHAREHOLDERS of SERIES A, SERIES B, SAFE, AND SAFE B-1 investors. This is located in PROFITPAY's Comerica bank account.

14.     For more than twenty-four (24) years, Plaintiff KAR is a highly accomplished entrepreneur as Chief Executive Officer and Chief Financial Officer at a plethora of successful companies backed by prominent venture capital firms.

15.     In October 2021, KAR was approached by a C-suite executive recruiter for JAYESH about a potential position at PROFITPAY.

16.     The recruiter for JAYESH told him that PROFITPAY had about seventy-five (75) people, revenue growing from about three-hundred and fifty-thousand dollars ($350,000) per month to one million dollars ($1.0 million) per month to ten million ($10 million) per month. The recruiter for JAYESH stated he was "about to secure a large funding round" and was "looking for a seasoned finance executive to spearhead the company's financial future."

17.     KAR was initially hired as CFO of PROFITPAY, but JAYESH's intent was to induce KAR to become CEO, knowing that the prior CEO and founder of PROFITPAY was likely going to jail after killing three people in a DUI accident wherein the prior CEO even fraudulently reported the accident as if it was during a business work and asked the insurance company to pay $2.0 million to help settle the case.

18.     PROFITPAY's prior CEO where Defendant JAYESH was the second largest shareholder and managing member of the three (3) LLCs with about two-hundred and twenty-five Plaintiffs, such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia,* supplied false information to the recruiter and to and KAR that PROFITPAY had closed an investment for $50 million, putting PROFITPAY at a seven-hundred million dollar ($700) million valuation, when in fact the company barely had money to meet payroll.

19.     Thus KAR, in detrimental reliance on the misrepresentation by the prior CEO with active participation of JAYESH as evidenced from the Newsletters that he has sent to all investors and shareholders, accepted the position of CFO on the understanding that he would be receiving a 4% ownership interest in a firm that would have $53 million in the bank and would have a $700 million valuation.

20.     In an in-person meeting right after joining PROFITPAY that occurred in San Bruno, JAYESH did not disclose PROFITPAY's dire situation. JAYESH did not even disclose

that the prior CEO was in a DUI accident; instead, JAYESH cheered on the possible valuation numbers that the prior CEO was sharing.

21.     Shortly, KAR learned from the prior CEO that he was hired to be the CEO, because of the DUI accident. KAR then realized the dire state of PROFITPAY's finances, JAYESH turned around putting all the blame on the prior CEO, acted completely innocent, and pleaded with him to remain as CEO.

22.     JAYESH pleaded with KAR to help to take control from the prior CEO and turn the company's business around, purchased certain assets together with VIMAL at fifty-percent (50%) discount while promising to personally invest up to one million dollars ($1 million) of his own funds into PROFITPAY to help achieve these objectives.

23.     Defendant VIMAL also promised to invest additional funds in PROFITPAY.

24.     Ultimately, however, JAYESH and VIMAL did not live up to their promise; and, did not invest further capital in PROFITPAY as agreed as part of the restructuring effort while ousting the prior CEO.

25.     Despite agreeing to invest one million dollars ($1 million), regardless of the Company's progress and another one million dollars ($1 million) based on the Company's progress, not only did they not invest but they forced KAR to pay one-hundred thousand dollars ($100,000) to buy out one single individual Plaintiffs who was not happy. In having a Board that included three related parties, KAR had no choice but to agree.

26.     In the ensuing months, KAR managed to turn around PROFITPAY's business, replacing the prior CEO, buying back the prior CEO's shares for the company, reducing more than $3 million in liabilities to nearly zero, replacing the employees, shutting down non-performing code, moving customers to a different platform, and finally achieving profitability for PROFITPAY while running the business as a sole employee while dealing with a seriously

stressful and volatile environment created by the prior CEO. The Company's financials were not kept in order, taxes could not be filed because of the lack of financial records, and dealing with back taxes which were not paid to the State.

27.     Meanwhile, JAYESH was engaged in a Ponzi scheme at ALINOR/ONRIVA.

28.     JAYESH, who in conversations has purported to be a "billionaire," "launching a multi-billion-dollar fund," and taking ONRIVA public in a matter of months has, in fact, been operating a fraudulent scheme to obtain investment at ONRIVA—and is attempting to gain control of PROFITPAY's assets in furtherance of the scheme. JAYESH, VIMAL and DEVESH have launched a fundraising platform Monriva Capital raising one billion dollars ($1.0 billion) in the end of the year 2022 to Defendants' successful scheme of raising money from a lot of innocent Plaintiffs.

29.     In October 2022, JAYESH invited KAR to a party that JAYESH had hosted in Nashville, Tennessee. ONRIVA executives attended the party. KAR could not attend the function for personal reasons. JAYESH claimed that to be a huge success including the launch of his fund Monriva Capital, a platform to raise capital.

30.     Per information and belief, according to KAR, Defendant ONRIVA was in business for approximately eight (8) years with no stable market team. Defendant ONRIVA has not delivered on the promises that it has made to its Plaintiffs.

31.     Despite repeated requests by KAR, ONRIVA and JAYESH have not provided basic financial diligence materials, such as the GAAP-compliant financial statements.

32.     JAYESH initially floated the idea that ONRIVA was going to invest in PROFITPAY which derailed KAR's focus on building the business per a plan that he proposed and even communicated to all the shareholders, such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia.*

33.     Per information and belief, according to PLAINTIFF KAR, the PROFITPAY stocks were sold to investors allegedly at the inflated price of $0.83 per share, and then fell to $0.06 per share.

34.     Such investors were, including, but not limited to:

| | |
|---|---|
| Todd Bricker | $50,000 |
| Dr Friday CPA | $50,000 |
| Balu Patel | $100,000 |
| Hinesh Patel | $50,000 |
| | |
| John Doe 1 | $50,000 |
| John Doe 2 | $50,000 |
| John Doe 3 | $50,000 |
| John Doe 4 | $50,000 |
| John Doe 5 | $50,000 |
| John Doe 6 | $50,000 |
| John Doe 7 | $50,000 |
| John Doe 8 | $50,000 |
| John Doe 9 | $100,000 |
| John Doe 10 | $50,000 |
| John Doe 11 | $50,000 |
| John Doe 12 | $100,000 |
| John Doe 13 | $100,000 |
| John Doe 14 | $50,000 |
| John Doe 15 | $50,000 |
| John Doe 16 | $50,000 |
| John Doe 17 | $50,000 |

35.     Subsequently, without involving KAR in any negotiation with JAFRI, CEO of ONRIVA, as well as JAYESH e-mailed KAR a draft term sheet with transaction terms while suggesting that ONRIVA would buy the assets for about 660,000 shares each priced at about fifty

SECOND-AMENDED COMPLAINT FOR DAMAGES

dollars ($50) per share, five (5) times more than the price at the last round of about ten dollars ($10) per share.

36.     JAYESH discussed with KAR a few times about how the shares were to be distributed and KAR prepared and shared a model both with JAYESH and the CFO of Onriva.

37.     JAYESH kept KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a year, would go public, and provide five-to-ten times (5-10X) exit to the Plaintiffs at the very least while pointing out to the success of TRIP ACTIONS ( this is about twelve billion ($12 billion) dollar valuation while doing one billion dollars ($1 billion) in revenue.)

38.     Following a half-a-day-long meeting in the presence of JAYESH, VIMAL, DEVESH as well as the CEO, CTO, and CFO of ONRIVA and a subsequent meeting with ONRIVA's CTO, KAR started realizing that ONRIVA's revenue was under one million dollars ($1 million) for the year 2022 and may not even be two-to-three million dollars ($2-3 million) in the year 2023 as the Company is going through a leadership crisis in the go to market team. CTO of ONRIVA stated that JAFRI, the CEO do not like to talk about the revenue number but the top line bookings as Sales which to KAR was creating an impression that revenue is 20-30 times higher given the current business model generates four-to-five-percent (4%-5%) of revenue or even less from the airline and hotel bookings.

39.     Over the course of the week, KAR was convinced that ONRIVA was simply hiding the truth. Getting financial statements and projections are simple requests in a transaction to establish the value of the receipts. JAYESH shared revenue run rate numbers of Onriva in a WhatsApp message which were overstated by twenty times (20X), not twenty percent (20%.) He further had a 1:1 call with JAYESH to express his concerns about ONRIVA and corrected JAYESH on the revenue numbers.

40.     Per information and belief, according to KAR, PLAINTIFF KAR was struggling in how a company that just launched in a hyper-competitive travel space with $one to two million dollars in revenue be valued at a thousand (1,000) times the prior year revenue, four-five hundred times (400-500X) the current revenue run rate and possibly three-to-four hundred times (300-400X) of the achievable revenue for this year while suggesting that this could exit at billions of dollars of valuation through a purchase or acquisition any company on this earth can go public.

41.     Per information and belief, according to KAR, DEFENDANT ALINOR/ONRIVA has taken more than forty-five million ($45 million) from approximately four-hundred million ($400 million) Plaintiffs, all the while promising them lucrative exits at absurd returns on investment, from ten to hundred times (10-100X) and is currently using this acquisition to help artificially increase the valuation with no real success in terms or the Company's maturity in products and revenue.

42.     Per information and belief, according to KAR, DEFENDANTS JAYESH and ALINOR/ONRIVA have claimed the valuation to increase to at least one billion dollar valuation in the near term for ALINOR/ONRIVA in next few months, with no basis except for the fact that JAFRI is supposed to be putting his own money to his Company at a higher valuation so that they could use that as a basis to raise money at even higher valuation from retail Plaintiffs including sourcing capital by engaging investment bankers.

43.     Sophisticated venture capital firms have avoided investing in ONRIVA. Rather, JAYESH and ONRIVA have focused on swindling less sophisticated Plaintiffs.

44.     Per information and belief, according to KAR, DEFENDANTS JAYESH and ONRIVA are operating a Ponzi scheme whereby they have continuously sought more and more investment first in PROFITPAY and then in ONRIVA, at higher and higher valuations, in order to provide impatient Plaintiffs an "exit," while continuing to perpetuate the scheme.

45.     Per information and belief, according to KAR, DEFENDANT VAJID JAFRI, a principal at ONRIVA, has sold his personal shares held in his previous Company Mondee, Inc., to DEFENDANT JAYESH.

46.     Per information and belief, according to KAR, subsequently, in lieu of raising thirty-five ($35) million funds from approximately four-hundred million ($400 million), individual Plaintiffs provided JAYESH with significant shares in ONRIVA whereby according to JAYESH he owns now 13% of the Company's shares.

47.     JAYESH has used a CAP table with fabricated spreadsheets showing ludicrous $8 billion exit scenarios to induce Plaintiffs to raise capital at PROFITPAY and used hyperinflated financial projections possibilities in the Newsletters to raise capital to ONRIVA, when the company lacks stable corporate governance and lacks assets that would support such a valuation.

48.     On April 16, 2023, JAYESH called a Board meeting wherein he came prepared with other two related Board members to dictate the terms of the acquisition to KAR and have him approve the resolutions without having any discussion whatsoever while denying providing any basic diligence material about ONRIVA such as basic financial statement.

49.     On April 18, 2023, JAYESH purportedly caused PROFITPAY to enter into a so-called "Asset Purchase Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY. However, JAYESH fraudulently manipulated the proposed Asset Purchase Agreement in order to acquire PROFITPAY on unduly favorable terms to ONRIVA and himself, while pretending that the shares will be distributed ratably per the Cap table shared with both Onriva and him weeks before, which terms dilute the value of PROFITPAY's other Plaintiffs, including KAR, by 80%.

50.     Defendant JAYESH, as a principal of both ONRIVA and PROFITPAY, has attempted to effectuate a highly self-interested transaction, to the detriment of PROFITPAY, its

Plaintiffs, and such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia, and his fiduciary duty thereto.

51.     Defendant JAYESH, and the other board members of PROFITPAY, did not seek approval for the Asset Purchase Agreement from non-conflicted Plaintiffs and/or shareholders of PROFITPAY.

52.     Where a transaction between two corporations thereby benefits one corporation at the expense of the other corporation, and especially if it personally benefits majority directors, it should be set aside. Remillard Brick Co. v. Remillard-Dandini Co. (1952) 109 Cal.App.2d 405, 241 P.2d 66.

53.     The Asset Purchase Agreement is a conflicted and self-interested transaction that harms PROFITPAY's Plaintiffs, such as PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia; and, that PROFITPAY is intended solely to provide assets to ONRIVA to support JAYESH's ongoing *Ponzi* scheme at ONRIVA.

54.     As such, **the Asset Purchase Agreement is void and/or must be set aside.**

55.     The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents).

56.     Subsequently without involving PLAINTIFF KAR, and/or any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10).

57.     Prior to Defendants JAYESH, DEVESH, and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR there was one vague e-mail to investors and shareholders.

58.     There were no terms disclosed to investors and shareholders by Defendants JAYESH, DEVESH, and VIMAL in any kind of public disclosure.

59.     There were no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY TECHNOLOGIES, INC. to third-party, ONRIVA/ALINOR/JAFRI by Defendants JAYESH, DEVESH, and VIMAL.

60.     There were no executed agreements signed by PLAINTIFF TANMAY KAR.

61.     Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR.

62.     Initially, when Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders, Defendants JAYESH, DEVESH, and VIMAL allegedly giving them a choice to invest between PROFITPAY, and/or ONRIVA/ALINOR.

63.     Per information and belief of Tanmay Kar, some investors, are allegedly filing a lawsuit against Defendants in a different sister jurisdiction, Oklahoma, and/or Tennessee.

64.     A class-action may ensue in this, and/or related matters.

65.     Based on the negative backlash they may experience, and cultural fear, several investors who are closely-connected with defendants are apprehensive and fearful to be named as class-action members, and prefer to remain anonymous even as intervenors.

**CLAIMS FOR RELIEF**

**I.**

**FIRST CLAIM FOR RELIEF**

**FRAUDULENT INDUCEMENT**

*(Against all named Defendants; and, DOES 3-10, inclusive)*

66.     Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

67.     Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, were fraudulently induced by Defendant JAYESH to accept a position at PROFITPAY, based on the misrepresentations related to the actual financial status of PROFITPAY; and, its resulting sale and purchase to Defendant ONRIVA/ALINOR/JAFRI.

68.     Defendant JAYESH knew, and/or should have known the actual financial status of PROFITPAY at the time he made those misrepresentations and intended for Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, to rely on those misrepresentations in order to induce him to INVEST in the corporation.

69.     Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, justifiably relied on Defendant JAYESH's misrepresentations and, as an outsider, could not have known the true financial status of PROFITPAY at the time he was hired.

70.     As a result of JAYESH's fraudulent misrepresentations, Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, suffered damages in an amount to be determined at trial according to proof.

## II.

## SECOND FLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

*(Against all named Defendants; and, DOES 3-10, inclusive)*

71.     Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

72.     Defendants JAYESH, DEVESH, and VIMAL are directors of PROFITPAY.

14

73.     Defendants JAYESH, DEVESH, and VIMAL owe PROFITPAY and its shareholders, such as Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, a fiduciary duty of the highest good faith.

74.     Defendants JAYESH, DEVESH, and VIMAL have orchestrated a purported Asset Purchase Agreement, purporting to acquire PROFITPAY and its assets on behalf of ONRIVA, with unduly favorable terms to themselves harming Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*.

75.     The Asset Purchase Agreement provides for the purchase of Plaintiff PROFITPAY on terms that dilute the value of other shareholders' interests in PROFITPAY by 80% was not shared with Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*.

76.     Defendants JAYESH, DEVESH and VIMAL are shareholders of ONRIVA, such as Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*.

77.     As such, the purported Asset Purchase Agreement is a flagrantly self-interested and conflicted transaction; and not disclosed to Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*.

78.     As a result of the purported Asset Purchase Agreement, PROFITPAY and its shareholders, including Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*, were actually and proximately harmed, jointly, collectively, and individually by the actions, and omissions of Defendants.

79.     PROFITPAY and its shareholders, including Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, have suffered damages proximately caused by Defendants' breaches of their fiduciary duty.

///

///

### III.

### **THIRD CLAIM FOR RELIEF**

### **BREACH OF CONTRACT**

### ***(Against all named Defendants; and, DOES 3-10, inclusive)***

80.     Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

81.     The parties agreed that ONRIVA would acquire PROFITPAY on terms that were fair to PROFITPAY and its shareholders, including KAR and Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*. However, the latter do not know about this arrangement, as well as have never seen any executed Agreement, because such an executed Agreement does not exist.

82.     However, Defendants JAYESH, DEVESH, and VIMAL unlawfully purported to pass a resolution on behalf of PROFITPAY that violated this agreement, giving JAYESH eighty percent (80%) of the value and diluting the value received by the other PROFITPAY shareholders, including KAR, by eighty-percent (80%), and Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*.

83.     Defendants' conduct constitutes a breach of the agreement.

84.     Plaintiffs have suffered damages proximately caused by Defendants' breach.

### IV.

### **FOURTH CLAIM FOR RELIEF**

### **FRAUD**

### ***(Against all named Defendants; and, DOES 3-10, inclusive)***

85.     Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

86.     Defendants have repeatedly supplied false information to KAR and Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*, in order to induce them to invest additional capital in PROFITPAY.

87.     Defendants falsely stated to Plaintiffs, such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, directly and via press releases, that PROFITPAY was ***acquired***. However, this was a misrepresentation: PROFITPAY merely had a domain name change while the prior CEO was criminally charged for killing three people in a DUI.

88.     Defendants falsely stated to Plaintiffs such as Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, that Softbank would be making an investment in PROFITPAY when they had direct and constructive knowledge that it would not be.

89.     Defendants falsely stated to Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, that PROFITPAY would be acquired on fair terms.

90.     Defendants knew, and/or should have known, their misrepresented statements were false and intended for Plaintiffs to detrimentally rely on Defendants' statements.

91.     Plaintiffs have reasonably relied on Defendants' misrepresentations and suffered damages actually and proximately caused thereby.

92.     Defendants JAYESH, DEVESH, and VIMAL had the requisite mental state to deceive, manipulate, and defraud investors, shareholders, employee, CEO, intermediaries, and related individuals and entities of PROFITPAY TECHNOLOGIES, INC., as well as its CEO TANMAY KAR, because Defendants JAYESH, DEVESH, and VIMAL stated to such individuals that they're raising monies and capital at $0.83 to triple the money raised. (not for the sale to ONRIVA/ALINOR/JAFRI).

///

///

SECOND-AMENDED COMPLAINT FOR DAMAGES

93.     The investors, shareholders, intermediaries and related individuals and entities of PROFITPAY TECHNOLOGIES, INC., as well as its CEO/employee TANMAY KAR, detrimentally relied on the misrepresentations and omissions.

94.     Jointly/individually based on each of their conscious behavior, and/or recklessness, Defendants JAYESH, DEVESH, and VIMAL did not inform such individuals that the monies and capital raised will be to initiate a third-party purchase and sale to ONRIVA/ALINOR/ JAFRI.

95.     Such omissions were deceitful, because Defendants JAYESH, DEVESH, VIMAL, and JAFRI **planned** - *prior to raising monies and capital for PROFITPAY from investors and shareholders* – that the monies and capital were raised to **initiate the transfer and sale of PROFITPAY to ONRIVA/ALINOR/JAFRI.**

96.     The monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL were from SERIES A, SERIES B, SAFE, and SAFE-B investors and shareholders.

97.     Such monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL, raised was between $50,000-$150,000 per SERIES A, SERIES B, SAFE, and SAFE-B investor and shareholder.

98.     Defendants JAYESH, DEVESH, and VIMAL had the defrauded intent to engage in a pattern of falsified and misrepresented marketing and advertising. This was more than puffery.

99.     This culminated in at least $625,000 if not more.

100.    The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents).

101.    Subsequently    without    involving    PLAINTIFF    KAR,    and/or    any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant

JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10).

102.    Prior to Defendants JAYESH, DEVESH, and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR there was one vague e-mail to investors and shareholders.

103.    There were no terms disclosed to investors and shareholders by Defendants JAYESH, DEVESH, and VIMAL in any kind of public disclosure.

104.    There were no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY TECHNOLOGIES, INC. to third-party, ONRIVA/ALINOR/JAFRI by Defendants JAYESH, DEVESH, and VIMAL.

105.    There were no executed agreements signed by PLAINTIFF TANMAY KAR.

106.    Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR.

107.    Initially, when Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders, Defendants JAYESH, DEVESH, and VIMAL allegedly giving them a choice to invest between PROFITPAY, and/or ONRIVA/ALINOR.

108.    The investors and shareholders who intentionally invested in PROFITPAY, and not in ONRIVA/ALINOR made a strategic decision to invest. They include, but are not limited to,

| | |
|---|---|
| Todd Bricker | $50,000 |
| Dr Friday CPA | $50,000 |
| Balu Patel | $100,000 |
| Hinesh Patel | $50,000 |
| | |
| John Doe 1 | $50,000 |
| John Doe 2 | $50,000 |

| | |
|---|---|
| John Doe 3 | $50,000 |
| John Doe 4 | $50,000 |
| John Doe 5 | $50,000 |
| John Doe 6 | $50,000 |
| John Doe 7 | $50,000 |
| John Doe 8 | $50,000 |
| John Doe 9 | $100,000 |
| John Doe 10 | $50,000 |
| John Doe 11 | $50,000 |
| John Doe 12 | $100,000 |
| John Doe 13 | $100,000 |
| John Doe 14 | $50,000 |
| John Doe 15 | $50,000 |
| John Doe 16 | $50,000 |
| John Doe 17 | $50,000 |

109.    However, in 2022-2023, Defendants JAYESH, DEVESH, and VIMAL took the same capital/monies raised for PROFITPAY; and, were to execute the transfer PROFTIPAY to ONRIVA/ALINOR/ JAFRI.

110.    The advertising to raise capital for PROFITPAY; and, then transferring it to third party, ONRIVA/ALINOR/JAFRI, unbeknownst to investors, and shareholders were intentional with intent to defraud, deceive, and scheme between, amongst, individually, and collectively, between Defendants JAFRI, JAYESH, DEVESH, and VIMAL.

111.    Upon the filing of this lawsuit, JAYESH, and, ONRIVA have claimed the valuation to increase to at least $1 billion valuation in the near term for ONRIVA.

112.    There is a **loss causation** to Plaintiffs, i.e., Defendants JAFRI, JAYESH, DEVESH, and VIMAL's intentional deceit caused actually, proximately, directly, and indirectly, collectively, individually, and jointly, to plaintiffs, investors, and shareholders. This was at least $625,000, and

any future promised earnings and appreciation of invested monies and capital of $50,000-$150,000 per investor and/or shareholder.

113.    Plaintiffs were damaged based on the statutory, and contractual basis, as well as request relief stated below.

**V.**

**FIFTH CLAIM FOR RELIEF**

**NEGLIGENT MISREPRESENTATION**

*(Against all named Defendants; and, DOES 3-10, inclusive)*

114.    Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

115.    Defendants misrepresented the financial status of PROFITPAY and the terms on which PROFITPAY would be acquired to Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*.

116.    Defendants lacked reasonable grounds for believing their statements to be true, when they knew and/or should have known the true financial status of PROFITPAY and the terms on which the purported acquisition by ONRIVA would commence.

117.    Defendants intended to induce Plaintiffs TANMAY KAR's, INVESTORS', SHAREHOLDERS', *inter alia*, reliance on their misrepresentations.

118.    Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS, *inter alia*, did not know the truth of these matters and justifiably relied on Defendants' misrepresentations.

119.    Plaintiffs suffered damages proximately caused by Defendants' misrepresentations.

///

///

///

# VI.

## SIXTH CLAIM FOR RELIEF

### (SECURITIES & INVESTMENT FRAUD)

*(Against all named Defendants; and, DOES 3-10, inclusive)*

120.   Plaintiffs refer to and incorporate the foregoing paragraphs as if fully set forth herein.

121.   Pursuant to the Securities Act, Exchange Act, Private Securities Litigation Reform Act of 1995 (PSLRA), and Securities and Exchange Commission (SEC), Defendants JAYESH, DEVESH, and VIMAL have committed securities fraud with particular and specific scienter to deceive, manipulate, and defraud investors, shareholders, employee, CEO, intermediaries and related individuals and entities of PLAINTIFF PROFITPAY TECHNOLOGIES, INC., as well as its CEO/PLAINTIFF TANMAY KAR.

122.   The required elements of a private securities fraud action are: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." In re Daou Sys. Inc., 411 F.3d 1006, 1014 (9th Cir. 2005) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)).

123.   Specifically, under Section 11 of the Securities Act, Section 12 of the Exchange Act, and Section 10(b) of the Exchange Act, and 10(b)(5), Defendants JAYESH, DEVESH, VIMAL, and JAFRI have demonstrated a "strong inference" of scienter — i.e., a strong inference that the Defendants JAYESH, DEVESH, VIMAL and, JAFRI, acted with an intent to deceive, manipulate, or defraud. 15 U.S.C. § 78u-4(b)(2); Ernst Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

124.    Defendants JAYESH, DEVESH, and VIMAL had the requisite mental state to deceive, manipulate, and defraud investors, shareholders, employee, CEO, intermediaries, and related individuals and entities of PROFITPAY TECHNOLOGIES, INC., as well as its CEO TANMAY KAR, because Defendants JAYESH, DEVESH, and VIMAL stated to such individuals that they're raising monies and capital at $0.83 to triple the money raised. (not for the sale to ONRIVA/ALINOR/JAFRI).

125.    The investors, shareholders, intermediaries and related individuals and entities of PROFITPAY TECHNOLOGIES, INC., as well as its CEO/employee TANMAY KAR, detrimentally relied on the misrepresentations and omissions.

126.    Jointly/individually based on each of their conscious behavior, and/or recklessness, Defendants JAYESH, DEVESH, and VIMAL did not inform such individuals that the monies and capital raised will be to initiate a third-party purchase and sale to ONRIVA/ALINOR/ JAFRI.

127.    Such omissions were deceitful, because Defendants JAYESH, DEVESH, VIMAL, and JAFRI **planned** - *prior to raising monies and capital for PROFITPAY from investors and shareholders* – that the monies and capital were raised to **initiate the transfer and sale of PROFITPAY to ONRIVA/ALINOR/JAFRI.**

128.    The monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL were from SERIES A, SERIES B, SAFE, and SAFE-B investors and shareholders.

129.    Such monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL, raised was between $50,000-$150,000 per SERIES A, SERIES B, SAFE, and SAFE-B investor and shareholder.

130.    Defendants JAYESH, DEVESH, and VIMAL had the defrauded intent to engage in a pattern of falsified and misrepresented marketing and advertising. This was more than puffery.

131.    This culminated in at least $625,000 if not more.

132.    The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents).

133.    Subsequently without involving PLAINTIFF KAR, and/or any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10).

134.    Prior to Defendants JAYESH, DEVESH, and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR there was one vague e-mail to investors and shareholders.

135.    There were no terms disclosed to investors and shareholders by Defendants JAYESH, DEVESH, and VIMAL in any kind of public disclosure.

136.    There were no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY TECHNOLOGIES, INC. to third-party, ONRIVA/ALINOR/JAFRI by Defendants JAYESH, DEVESH, and VIMAL.

137.    There were no executed agreements signed by PLAINTIFF TANMAY KAR.

138.    Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR.

139.    Initially, when Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders, Defendants JAYESH, DEVESH, and VIMAL allegedly gave them a choice to invest between PROFITPAY, and/or ONRIVA/ALINOR.

140.   The investors and shareholders who intentionally invested in PROFITPAY, and not in ONRIVA/ALINOR made a strategic decision to invest. They include, but are not limited to,

| | |
|---|---|
| Todd Bricker | $50,000 |
| Dr Friday CPA | $50,000 |
| Balu Patel | $100,000 |
| Hinesh Patel | $50,000 |
| | |
| John Doe 1 | $50,000 |
| John Doe 2 | $50,000 |
| John Doe 3 | $50,000 |
| John Doe 4 | $50,000 |
| John Doe 5 | $50,000 |
| John Doe 6 | $50,000 |
| John Doe 7 | $50,000 |
| John Doe 8 | $50,000 |
| John Doe 9 | $100,000 |
| John Doe 10 | $50,000 |
| John Doe 11 | $50,000 |
| John Doe 12 | $100,000 |
| John Doe 13 | $100,000 |
| John Doe 14 | $50,000 |
| John Doe 15 | $50,000 |
| John Doe 16 | $50,000 |
| John Doe 17 | $50,000 |

141.   However, in 2022-2023, Defendants JAYESH, DEVESH, and VIMAL took the same capital/monies raised for PROFITPAY; and, were to execute the transfer PROFTIPAY to ONRIVA/ALINOR/ JAFRI.

142.   The advertising to raise capital for PROFITPAY; and, then transferring it to third-party, ONRIVA/ALINOR/JAFRI, unbeknownst to investors, and shareholders were intentional

with intent to defraud, deceive, and scheme between, amongst, individually, and collectively, between Defendants JAFRI, JAYESH, DEVESH, and VIMAL.

143. Upon the filing of this lawsuit, JAYESH and ONRIVA have claimed the valuation to increase to at least $1 billion valuation in the near term for ONRIVA.

144. There is a **loss causation** to Plaintiffs, i.e., Defendants JAFRI, JAYESH, DEVESH, and VIMAL's intentional deceit caused actually, proximately, directly, and indirectly, collectively, individually, and jointly, to plaintiffs, investors, and shareholders. This was at least $625,000, and any future promised earnings and appreciation of invested monies and capital of $50,000-$150,000 per investor and shareholder.

145. The relevant economic loss based on the Defendants JAFRI, JAYESH, DEVESH, and VIMAL's intentional deceit and misrepresentations were the actual, and/or potential loss at least $625,000, and any future promised earnings and appreciation of invested monies and capital of $50,000-$150,000 per investors and shareholders.

146. The valuation of each individual stock may potentially have fallen; however, it is unclear how to calculate the exact income based on the six-hundred and twenty-five thousand dollars' ($625,000) investment of investors and shareholders in PROFITPAY's Comerica's bank account.

147. The practice of sale and purchase of PROFITPAY by ONRIVA/ALINOR; and, each of SERIES A, SERIES B, SAFE, and SAFE-B investors were defrauded based on the third-party sale to ALINOR/ONRIVA/JAFRI.

148. When the practice of sale and purchase of PROFITPAY by ONRIVA/ALINOR; and, each of SERIES A, SERIES B, SAFE, and SAFE-B investors were defrauded based on the third-party sale to ALINOR/ONRIVA/JAFRI, became generally known, this caused investors and shareholders to demand their monies and capital back to them.

149.    Defendants JAFRI, JAYESH, DEVESH, and VIMALs' loss causation is pled where jointly, collectively, individually, and each of their disclosure reveals a risk, and/or potential for widespread fraudulent conduct that could be prevalent in Defendants' practices on-going.

150.    Per information and belief of Tanmay Kar, some investors, are allegedly filing a lawsuit against Defendants in a different sister jurisdiction, Oklahoma, and/or Tennessee.

151.    Plaintiffs request the appropriate relief pursuant to code, and/or that what is stated in the below prayer for relief; and as this Court deems just.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      Damages in the amount of $1.73 million;

B.      Damages, actual, special, general, exemplary, expectancy, consequential, punitive, treble, [according to proof at trial];

C.      Judgment permanently enjoining Defendants from taking possession of PROFITPAY and/or any of its assets;

D.      Judgment declaring the purported Asset Purchase Agreement void;

E.      Judgment awarding Plaintiffs all of their costs, including their reasonable attorneys' fees, incurred in prosecuting this action;

F.      Judgment awarding Plaintiffs pre-judgment and post-judgment interest; and,

G.      Judgment awarding Plaintiffs such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims as to which they have a right to a jury trial.

///

///

**DATED:  July 30, 2023**

*Respectfully submitted,*

**LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath
Counsel for PLAINTIFFS PROFITPAY
TECHNOLOGIES, INC.; TANMAY KAR;
AND JOHN DOE INTERVENORS