LAW OFFICE OF RESHMA KAMATH

Reshma Kamath, Cal. Bar No. 333800

700 El Camino Real, Suite 120, #1084

Menlo Park, California 94025, United States

Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com

Counsel for Plaintiff PROFITPAY

TECHNOLOGIES, INC. & TANMAY KAR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| PROFITPAY TECHNOLOGIES, INC.; a corporation; TANMAY KAR, an individual, Plaintiffs,<br><br>Plaintiff,<br><br>v.<br><br>ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual; VAJID JAFRI, an individual; and DOES 2-10, inclusive,<br><br>Defendants. | Case No.: 4:23-cv-02064-YGR<br><br>[*Assigned to the Honorable District Judge Yvonne Gonzalez Rogers*]<br><br>PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS (MTD); REQUEST FOR SANCTIONS OF $10,500 AGAINST DEFENDANTS' ATTORNEYS MARK SEBBINS AND MARK VAN NIEKERK<br><br>HEARING:<br>DATE: SEPTEMBER 19, 2023<br>TIME:  2 P.M. PDT<br>DEP'T: COURTROOM 1, 4TH FLOOR<br><br><br>DEMAND FOR JURY TRIAL |

*TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, HEREIN:*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF CONTENTS</u>

<u>INTRODUCTION</u>………………………………………………………p.7

<u>FACTUAL BACKGROUND</u>………………………………………… p.7

<u>LAW</u>…………………………………………………………………....p.8

<u>ARGUMENT</u>………………………………………………………..p.11

<u>IN THE SECOND-AMENDED COMPLAINT, PLAINTIFFS HAVE SPECIFICALLY AND PARTICULARLY PLED AND MET PLAUSIBILITY, SCIENTER, AND, FEDERAL RULES OF CIVIL PROCEDURE RULE 9B FOR SECURITIES & INVESTMENT FRAUD AGAINST DEFENDANTS</u>………..p.11

I.    THE SIXTH CAUSE OF ACTION SECURITIES & INVESTMENT
      FRAUD IS WELL-PLED WITH SPECIFICITY AND PARTICULARITY
      UNDER FED. RUL. CIV. PROC. RULES 12(B)(6), 9(B), AND PSLRA.p.11

A.    THE SIXTH CAUSE OF ACTION SECURITIES & INVESTMENT
      FRAUD UNDER 10(B)(5) ALLEGES ATLEAST ONE MISSTATEMENT,
      AND/OR OMISSION…………………………………………………..p.12

B.    PLAINTIFFS CAN ALLEGE AS EVIDENCE ANY AND ALL FALSE
      AND/OR MISLEADING STATEMENTS THAT ANY INVESTOR COULD
      POTENTIALLY RELY ON………………………………………….p.14

C.    PLAINTIFFS ALLEGE THAT DEFENDANTS SECRETLY INTENDED
      NOT TO PERFORM A PURPORTED PROMISE, AND/OR HAD
      KNOWLEDGE THAT THE DEFENDANTS COULD NOT PERFORM..p.15

D.    DEFENDANTS MADE AN EXPRESS MISREPRESENTATION OF
      PRESENT-EXISTING FACT…………………………………………..p.17

E.    PLAUSIBILITY REQUIREMENT IS WELL-MET………………….p.18

F.    HEIGHTENED PLEADING STANDARD IS WELL-MET…………...p.19

G.    THE SCIENTER REQUIREMENT IS WELL-MET………………...p.20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

II.     THE FIRST TO FIFTH CAUSES OF ACTION ARE WELL PLED; SPECIFICALLY, THE FRAUD CAUSE OF ACTION PLED WITH SPECIFICITY AND PARTICULARITY…………………………….p.27

III.    PLAINTIFFS' REQUEST FOR SANCTIONS IN THE AMOUNT OF $10,500 AGAINST ATTORNEYS MIKE VAN NIEKERK AND MICHAEL STEBBINS FOR THEIR FAILURE TO COMPLY WITH SAFE-HARBOR REQUIREMENT PURSUANT TO FED. *RUL. CIV. PROC. RULE* 11….p.27

IV.     DEFENDANTS HAVE FAILED TO COMPLY WITH THE 21-DAY SAFE HARBOR AND PRESENTMENT REQUIREMENT; FED. *RUL. CIV. PROC. RULE* 11 SANCTIONS ARE NOT WARRANTED……………………….p.28

V.      DEFENDANTS JAYESH, DEVESH, AND VIMAL ARE EACH INDIVIDUALLY LIABLE FOR VIOLATIONS OF SECTION 10(B) AS WELL AS SECTION 20(A), BECAUSE EACH IS A CONTROLLING INDIVIDUAL……………………………………….p.30

CONCLUSION………………………………………………………..p.31

PROOF OF SERVICE……………………………………………….ps.32-33

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*No. 4 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp*.,

4

320 F.3d 920, 937-38 (9th Cir. 2003)…………………………………………….p.31

5

6

*Am. W. Holding Corp.* 320 F.3d 920, 943 (9th Cir. 2003)……………………*passim*

7

*Ashcroft v. Iqbal, U.S.,* 129 S.Ct. 1937 (2009) …………………………………p.9, 19

8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 105 (2d Cir. 2007)………p.15

9

10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929

11

(2007)……………………………………………………………………………..p.12

12

*Blake v. Dierdorff,* 856 F.2d 1365, 1369-70 (9th Cir. 1988)……………………..p.10

13

14

*Berson v. Applied Signal Tech., Inc.,* 527 F.3d 982 (9th Cir. 2008) …………..*passim*

15

*Bolling v. Dendreon Corp.* (W.D. Wash., June 5, 2014, No. C13-0872JLR) [pp. 12-

16

13]……………………………………………………………………………..*passim*

17

*Brody*, 280 F.3d at 1006……………………………………………………*passim*

18

19

*Cqfasso v. Gen. Dynamics Ch Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011)………….p.4

20

*Eon-Net, L.P. v. Flagstar Bancorp, Inc.* (W.D. Wash. 2006) 239 F.R.D. 609…...p.29

21

*First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the U.S.,* 164

22

F.Supp.2d 383, 394 (S.D.N.Y. 2001) (same)……………………………………..p.16

23

*Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) (same)………………..p.15

24

25

*Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 (9th Cir. 2000)………………..p.31

26

*IDT Corp. v. eGlobe, Inc.,* 140 F.Supp.2d 30, 35 (D.D.C. 2001) (same)…………p.15

27

28

*In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989)……….. *passim*

*In re Daou Sys., Inc. Sec. Litig*., 411 F.3d 1006, 1015 (9th Cir. 2005)…………*passim*

*In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008)……… *passim*

*In re MobileMedia Securities Litigation*, 28 F.Supp.2d 901 (D.N.J. 1998)…… *passim*

*In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1330 (3d Cir. 2002)………………..p.17

*In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir. 1999)……………..p.9

*In re Watchguard Sec. Litig.,* No. C05-0678JLR, 2006 WL 2038656, at *3 (W.D. Wash. Apr. 21, 2006)…………………………………………………………………..p.14

*In re Wells Fargo Secs. Litig*. (9th Cir. 1993) 12 F.3d 922……………………p.10,13

*Klahn v. Clackamas Cnty. Bank* (D. Or., Jan. 2, 2014, Civil No. 3:13 CV-621-ST) [pp. 2-3]……………………………………………………………………...p.29

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151 (9th Cir. 1996)……..p.31

*Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001)………………………….p.9

*Semegen v. Weidner,* 780 F.2d 727, 729, 734-35 (9th Cir. 1985)………………..p.8

*South Ferry LP*, 542 F.3d at 782-85 (9th Cir. 2008)……………………………..p.21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)……… .*passim*

*Wool v. Tandem Computers, Inc*., 818 F.2d 1433 (9th Cir. 1987)…………………p.10

*Worthy v. Camplin*, 333 F.3d 284, 294 (1st Cir. 2003)……………………………p.17

*Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009)…..*passim*

Statutes

§§ 10(b) and 10(b)(5) of the Securities Exchange Act of 1934………………*passim*

Private Securities Litigation Reform Act of 1995 ("PSLRA")……………....*passim*

15 U.S.C. § 78j(b)………………………………………………………… *passim*

17 C.F.R. § 240.10b-5(c)……………………………………………………p.11

Miscellaneous

*26 Williston on Contracts* § 69:11………………………………………..p.16

Fed. *Rul. Civ. Proc. Rule* 8(A)……...………………………………………p.27

Fed. *Rul. Civ. Proc. Rule* 9(B)……………………………………....*passim*

Fed. *Rul. Civ. Proc. Rule* 11……………………………………...*passim*

MEMORANDUM OF POINTS & AUTHORITIES

INTRODUCTION

PLAINTIFFS TANMAY KAR, and PROFITPAY TECHNOLOGIES, INC. [*hereinafter*, 'Plaintiffs'] submit the timely OPPOSITION to the MTD of Defendants JAYESH PATEL, ONRIVA/ALINOR, DEVESH PATEL, VIMAL PATEL, and ONRIVA/ALINOR, [*hereinafter*, 'Defendants'], based on the reasons stated below:

FACTUAL BACKGROUND

On April 27, 2023, Plaintiffs filed the afore-captioned federal action. A properly-noticed motion for preliminary injunction was filed. Defendants were properly noticed via telephone call, e-mail to each Defendant, and to its attorneys, about the *ex-parte*, including serving the case-initiating documents served via registered process-server. Based on the clerk's [erroneous] instructions, Plaintiffs filed a re-notice of motion. Thereafter, a first-amended complaint was filed, and a motion to dismiss followed.

On June 22, 2023, Defendants filed a concurrent state-court action. There was no notice from Defendants' attorneys to the undersigned counsel for Plaintiff Tanmay Kar about the Defendants' state court-action.

On July 11, 2023, the Court granted the motion to dismiss with leave to amend. The Second-Amended Complaint was due August 1, 2023, and Oppositions were due August 15, 2023. On July 30, 2023, Plaintiffs filed the Second-Amended Complaint.

From July 11, 2023, to August 14, 2023, there was <u>no</u> Fed. *Rul. Civ. Proc.* Rule 11 to notice and warn within the 21-day safe-harbor e-mail, and/or <u>no</u> telephone call whatsoever from any purpose of the state, and/or federal cases from Defendants' attorneys – to withdraw the Second-Amended Complaint.

On August 14, 2023, Defendants filed the Opposition. On August 15, 2023, and thereafter, Plaintiff [who was named Defendant in state court action] *removed* the matter to federal court. The removal is pending review.

<u>LAW</u>

A. Standard on a Motion to Dismiss in a Securities Fraud Case

A motion to dismiss in a securities fraud case is subject to three layers of analysis. *First*, the court must examine the pleadings under ordinary Rule 12(b)(6) standards: "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

*Second*, the court must examine the pleadings for compliance with the particularized pleading requirement found in Federal *Rule of Civil Procedure Rule* 9(b). *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 990 (9th Cir. 2009). The Ninth Circuit has long applied the heightened pleading standard of *Rule* 9(b) to securities fraud complaints, see *Id.* citing *Semegen v. Weidner,* 780 F.2d 727, 729, 734-35 (9th Cir. 1985), and therefore requires the element of falsity, or "a material misrepresentation or omission of fact," to be pled with particularity, see *Id.* citing

1    *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001); *In re Gilead Scis. Sec. Litig.,*

2    536 F.3d 1049, 1055 (9th Cir. 2008); *Ashcroft v. Iqbal, U.S.,* 129 S.Ct. 1937 (2009);

3
4    *Cafasso v. Gen. Dynamics Ch Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011).

5        *Third*, the court must examine the pleadings under the PSLRA. Since 1995,

6
7    courts were required to scrutinize securities fraud complaints under the more

8    exacting standards of the PSLRA. The PSLRA amended the Securities Exchange

9    Act to require that a securities fraud complaint "plead with particularity both falsity

10   and scienter." *Zucco*, 552 F.3d at 990 (quoting *Ronconi,* 253 F.3d at 429). To

11
12   properly allege falsity, a securities fraud complaint must now "specify each

13   statement alleged to have been misleading, [and] the reason or reasons why the

14
15   statement is misleading." 15 U.S.C. § 78u-4(b)(1). To the extent that an allegation

16   regarding a statement or omission is made on information and belief, "the complaint

17   shall state with particularity all facts on which that belief is formed." *Id.* In doing so,

18
19   the plaintiff must "reveal 'the sources of [his] information.'" *In re Daou Sys., Inc.*

20   *Sec. Litig*., 411 F.3d 1006, 1015 (9th Cir. 2005); *In re Silicon Graphics Inc. Sec.*

21   *Litig.,* 183 F.3d 970 (9th Cir. 1999); *Bolling v. Dendreon Corp.* (W.D. Wash., June

22
23   5, 2014, No. C13-0872JLR) [pp. 12-13].

24       In order to survive a motion to dismiss, plaintiffs who allege securities fraud

25   must plead facts which, if true, constitute fraud. Fed. *R. Civ. Proc. Rule* 9(b). Plaintiffs

26
27   are not required to assert facts pertaining to fraud that are "peculiarly within the

28   opposing party's knowledge," but the requirements of Rule 9(b) are satisfied only if

the allegations of fraud are accompanied by a statement of the facts upon which the fraud is founded. *Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987) (citations omitted); *In re Wells Fargo Secs. Litig*. (9th Cir. 1993) 12 F.3d 922.

To state a claim under SEC Act § 10(b) and SEC Rule 10b-5, codified at 17 CFR 240.10b-5, the plaintiffs must allege that defendants knowingly or recklessly published an "untrue statement of fact" or omitted to state a material fact "necessary to make the statements made, in light of all the circumstances in which they were made, not misleading." *In re Apple Computer Sec. Litig*., 886 F.2d 1109, 1113 (9th Cir. 1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

An omission is actionable where a plaintiff alleges that a defendant "omitted to state a material fact necessary to make the statements made, in light of all the circumstances in which they were made, not misleading." quoting *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989).

The allegations of motive and opportunity in the complaint must be sufficient to establish a basis for inferring the defendants' fraudulent intent. *Cf. Blake v. Dierdorff,* 856 F.2d 1365, 1369-70 (9th Cir. 1988) (allegations that corporate management distributed false and misleading information to protect their executive positions and substantial compensation, and to increase bonus compensation pled specific intent to commit mail fraud with the requisite particularity).

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for,

"any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

One such rule promulgated under the Act is SEC Rule 10b-5, which provides, *inter alia*, that "[i]t shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(c). To prevail on a SEC *Rule* 10b-5 claim, a securities fraud plaintiff must prove five elements:

"'(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss.'"

*Zucco*, 552 F.3d at 990 quoting *In re Daou*, 411 F.3d at 1014.

<u>ARGUMENT</u>

<u>IN THE SECOND-AMENDED COMPLAINT, PLAINTIFFS HAVE SPECIFICALLY AND PARTICULARLY PLED AND MET PLAUSIBILITY, SCIENTER, AND, FEDERAL RULES OF CIVIL PROCEDURE RULE 9B FOR SECURITIES & INVESTMENT FRAUD AGAINST DEFENDANTS</u>

I.     THE SIXTH CAUSE OF ACTION SECURITIES & INVESTMENT FRAUD IS WELL-PLED WITH SPECIFICITY AND PARTICULARITY UNDER FED. *RUL. CIV. PROC.* RULES 12(B)(6), 9(B), AND PSLRA.

Plaintiffs have pled each and every element of the SEC Rule 10B-5 claim with specificity and particularity in the Second-Amended Complaint. *Zucco Partners, LLC v. Digimarc Corp.* (9th Cir. 2009) 552 F.3d 981, 989 quoting *In re Daou*, 411 F.3d at

1014. As the Ninth Circuit court, "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs," *Gompper v. VISX, Inc.,* 298 F.3d 893, 895 (9th Cir. 2002), and will hold a dismissal inappropriate unless the plaintiffs' complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Zucco*, *supra*, 552 F.3d at 990.

This Honorable Court must take all well-pled factual allegations in the Second-Amended Complaint as true and construe them in the light most favorable to Plaintiffs. *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

In deciding this motion, the court is not strictly limited to the confines of the complaint. The court can also consider documents that are attached to the complaint or that are judicially noticeable. *Tellabs*, 551 U.S. at 322.; See also, "The court relied on these documents in its ruling, citing the "incorporation by reference" doctrine." *Bolling v. Dendreon Corp*. (W.D. Wash., June 5, 2014, No. C13-0872JLR) [pp. 14]; "Under that doctrine, when ruling on a Rule 12(b)(6) motion to dismiss a § 10(b) action, a court must consider the complaint in its entirety, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

A. THE SIXTH CAUSE OF ACTION SECURITIES & INVESTMENT FRAUD UNDER 10(B)(5) ALLEGES ATLEAST ONE MISSTATEMENT, AND/OR OMISSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A statement or omission is misleading in the securities fraud context "if it would give a reasonable investor the `impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.,* 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody,* 280 F.3d at 1006).

*In this case*, the public disclosure of Defendants' [draft] contract, containing its promise to conduct its sale to Defendants Onriva/Alinor/Vajid Jafri as a third-party buyer, is an actionable misstatement if a reasonable investor would materially view it as a certificate of Defendants' compliance with actuality. Further, the public disclosure of ProfitPay Technologies, Inc.'s stock price at a stated inflated price when it was actually lower, is an actionable misstatement if a reasonable investor would materially view it as a certificate of Defendants' compliance with actuality. Defendants had a duty to correct each of the false statement(s). See *In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 926 (9th Cir. 1993) stating that an omission is actionable where a plaintiff alleges that a defendant "omitted to state a material fact necessary to make the statements made, in light of all the circumstances in which they were made, not misleading" quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989) internal quotation marks omitted. This is not some kind of breach of contract that is alleged as fraud. It rises above the threshold of securities and investment fraud of Defendants JAYESH, VIMAL and DEVESH, making actionable misstatements about stock pricing/asset purchase of Plaintiff PROFITPAY TECHNOLOGIES, INC. to investors and Plaintiff CEO KAR. However, Defendants

did not correct such false misstatements to its investors, and/or CEO Tanmay Kar. This is on-going, continuous of misstating not only a pre-existing fact, but also making future promises of appreciated stock price increase based on ProfitPay Technologies, Inc.'s sale to third-party, Defendant Onriva/Alinor, and Defendant Jafri.

B.   PLAINTIFFS CAN ALLEGE AS EVIDENCE ANY AND ALL FALSE AND/OR MISLEADING STATEMENTS THAT ANY INVESTOR COULD POTENTIALLY RELY ON

Under the PSLRA, the court must weigh competing inferences and "only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing inference." *Zucco*, 552 F.3d at 991; *In re Watchguard Sec. Litig.*, No. C05-0678JLR, 2006 WL 2038656, at *3 (W.D. Wash. Apr. 21, 2006).

*In this instant case*, the Defendant-Board's malfeasance of securities and investment fraud is as cogent and compelling as to each named defendant, i.e., Board of ProfitPay – Devesh, Vimal, and Jayesh, as to any alternate version of events. Compared to any non-occurrence of such events that the MTD purports to plead, the misrepresentation(s) and omission(s) in the Second-Amended Complaint weigh so heavily in favor of securities and investment fraud that they could equally be credible and true; and, if so, fraud could be found.

The specific statements in the Second-Amended Complaint from Defendants Devesh, Vimal, and Jayesh [with the knowledge of its falsity] about ProfitPay Technologies, Inc.'s sale to Onriva [SAC, ¶ 35]; the over-inflated price of stocks at

0.83 ¢ and falling to 0.06 ¢ [SAC, ¶ 33]; the skewed, mis-informed valuation from Defendant JAYESH about Onriva to CEO KAR [SAC, ¶¶ 37-38]; the SAFE conversion features misrepresented [Declaration of Tanmay Kar in support of Opposition to MTD]; "disclosing the sale and purchase of PROFITPAY TO ALINOR/ONRIVA after Defendant raised over $625,000 in capital from each of the INVESTORS, and SHAREHOLDERS of SERIES A, SERIES B, SAFE, AND SAFE B-1 investors. This is located in PROFITPAY's Comerica bank account" [SAC, ¶ 13]; how on April 16, 2023, Defendants JAYESH, DEVESH, and VIMAL wanted KAR to blankly approve the resolutions without having any discussion whatsoever while denying providing any basic diligence material about ONRIVA such as basic financial statement [SAC, ¶ 48]; and how on April 18, 2023, Defendant JAYESH caused ProfitPay Technologies, Inc. to enter into a so-called "Asset Purchase Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY. [SAC, ¶ 49]. Thus, Plaintiffs have any and all evidence to allege securities and investment fraud.

      C.      PLAINTIFFS ALLEGE THAT DEFENDANTS SECRETLY INTENDED NOT TO PERFORM A PURPORTED PROMISE, AND/OR HAD KNOWLEDGE THAT THE DEFENDANTS COULD NOT PERFORM

Plaintiffs claim that when Defendant-Board Jayesh, Devesh and VIMAL, made a promise, each of the defendants, collectively and individually, secretly intended not to perform or knew that he could not perform. See *ATSI Commc'ns, Inc. v. Shaar*

*Fund, Ltd*., 493 F.3d 87, 105 (2d Cir. 2007) (same); *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) (same); *IDT Corp. v. eGlobe, Inc.,* 140 F.Supp.2d 30, 35 (D.D.C. 2001) (same); *First Lincoln Holdings, Inc. v. Equitable Life Assurance Soc'y of the U.S.,* 164 F.Supp.2d 383, 394 (S.D.N.Y. 2001) (same).

In the securities and investment fraud context, plaintiffs are not alleging merely a breach of contract, such as the SAFE contract of Defendants with investors, and the ASSET PURCHASE agreement to third-party, defendant, Onriva/Alinor; and/or, that there is a failure to carry out a promise.

As stated in the preceding section(s), Plaintiffs specifically allege that Defendants secretly intended not to perform a purported promise, and/or had knowledge that the defendants could not perform. For example, the defendants misrepresented to the investors and plaintiffs that the stock would be eighty-three cents (0.83 ¢). However, defendants knew that the defendants (Board of ProfitPay, i.e., VIMAL, Devesh, and Jayesh) could not perform that increase to eighty-three cents (0.83 ¢), and/or had knowledge they could not increase to such an inflated stock price of eighty-three cents (0.83 ¢). The Second-Amended Complaint states,

> "The Asset Purchase Agreement provides for the purchase of Plaintiff PROFITPAY on terms that dilute the value of other shareholders' interests in PROFITPAY by 80% was not shared with Plaintiffs TANMAY KAR, INVESTORS, SHAREHOLDERS *inter alia*." [SAC ¶ 56].

Even a promise that is forward looking at the time it is made could conceivably become "an inaccurate assertion as to a matter of past or existing fact," *26 Williston*

*on Contracts* § 69:11, if its repeated filing "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists," *Brody*, 280 F.3d at 1006. "[A] statement that is literally true can be misleading and thus actionable under the securities laws." *Id.*. Thus, of the afore-stated plethora of examples, the Defendant-Board's repeated disclosure of the falsified price of stock at eighty-three cents (0.83¢) when the Defendant-Board knew it was over-inflated with actual price at six cents (0.06¢), and/or the sale of ProfitPay, Inc. to Onriva/Alinor/Vajid Jafri – even if true – could be an actionable misstatement under securities law.

### D.   DEFENDANTS MADE AN EXPRESS MISREPRESENTATION OF PRESENT-EXISTING FACT

An express misrepresentation of present-existing fact and not merely a promise of future performance. *In re MobileMedia Securities Litigation*, 28 F.Supp.2d 901 (D.N.J. 1998). The court observed that "facts demonstrating [that the defendant] was not in compliance with the terms of the Credit Agreement from the moment it was signed would be important to a reasonable investor." *MobileMedia*, 28 F.Supp.2d at 939. *MobileMedia* is therefore consistent with the general principle that "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1330 (3d Cir. 2002). See *Worthy v. Camplin*, 333 F.3d 284, 294 (1st Cir. 2003), "When the defendant makes a specific promise . . . to perform an act, while intending not to perform the act, this may constitute a basis for a fraud

finding." *Id.*. Similarly, here, Defendants were not in compliance with the SAFE agreement, and/or the ASSET PURCHASE agreement, from the moment it was signed. For example, in the Second-Amended Complaint, *inter alia*, Plaintiffs specifically state SAC ¶¶ 95-100 present existing facts of misrepresentations/omissions:

> "95. Such omissions were deceitful, because Defendants JAYESH, DEVESH, VIMAL, and JAFRI planned - prior to raising monies and capital for PROFITPAY from investors and shareholders – that the monies and capital were raised to initiate the transfer and sale of PROFITPAY to ONRIVA/ALINOR/JAFRI.
> 96. The monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL were from SERIES A, SERIES B, SAFE, and SAFE-B investors and shareholders.
> 97. Such monies and capital raised with deceitful intent of Defendants JAYESH, DEVESH, and VIMAL, raised was between $50,000-$150,000 per SERIES A, SERIES B, SAFE, and SAFE-B investor and shareholder.
> 98. Defendants JAYESH, DEVESH, and VIMAL had the defrauded intent to engage in a pattern of falsified and misrepresented marketing and advertising. This was more than puffery.
> 99. This culminated in at least $625,000 if not more.
> 100. The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents)."

Thus, the Second-Amended Complaint alleges specific statements from Defendants JAYESH, DEVESH, and VIMAL to defraud and misrepresent as corporate management members.

E.     PLAUSIBILITY REQUIREMENT IS WELL-MET

The Second-Amended Complaint has met the plausibility requirement of the Private Securities Litigation Reform Act of 1995 ["PSLRA"]. A statement or

omission is misleading in the securities fraud context "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.,* 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody*, 280 F.3d at 1006). Thus, the misrepresentation claims stated in the prior sections satisfy the plausibility requirement of *Iqbal*. It is plausible that Defendants Jayesh, VIMAL, and Devesh, each and jointly, engaged in intentional falsification of misstatements to investors and Plaintiffs. There are written, memorialized documents and e-mails between KAR and JAYESH; as well as declarations from each of them agreeing there was to be a purported sale to third-party to ProfitPay Technologies, Inc., i.e., Defendant Onriva/Alinor (albeit based on the ommissions, misrepresentations). Further securities issues could be insider trading and tipper/tippee law violations.

F.   HEIGHTENED PLEADING STANDARD IS WELL-MET

Defendants argue that the who/who/what/when/where/how/why requirement are yet to be met in the Second-Amended Complaint. However, that is not true with a review of the allegations on the face of the Second-Amended Complaint.

Clearly, for several factual allegations, the Second-Amended Complaint specifically states April 16, and April 18, 2023, as the dates for communications from Defendant JAYESH to Plaintiff KAR about the asset purchase agreement to Defendant ONRIVA/ALINOR. Several other allegations, amongst others, in the Second-Amended Complaint state very specifically statements and communications

from Defendants Devesh, Vimal, and Jayesh [with the knowledge of its falsity] about ProfitPay Technologies, Inc.'s sale to Onriva [SAC, ¶ 35]; the over-inflated price of stocks at 0.83 ¢ and falling to 0.06 cents [SAC, ¶ 33]; the skewed, mis-informed valuation from Defendant JAYESH about Onriva to CEO KAR [SAC, ¶¶ 37-38]; the SAFE conversion features misrepresented [Declaration of Tanmay Kar in support of Opposition to MTD]; "disclosing the sale and purchase of PROFITPAY TO ALINOR/ONRIVA after Defendant raised over $625,000 in capital from each of the INVESTORS, and SHAREHOLDERS of SERIES A, SERIES B, SAFE, AND SAFE B-1 investors. This is located in PROFITPAY's Comerica bank account" [SAC, ¶ 13]; how on April 16, 2023, Defendants JAYESH, DEVESH, and VIMAL wanted KAR to blankly approve the resolutions without having any discussion whatsoever while denying providing any basic diligence material about ONRIVA such as basic financial statement [SAC, ¶ 48]; and how on April 18, 2023, Defendant JAYESH caused ProfitPay Technologies, Inc. to enter into a so-called "Asset Purchase Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY. [SAC, ¶ 49]. Thus, the misrepresentation claims pled satisfy the particularity requirement of *Rule* 9(b) of the Federal *Rules of Civil Procedure*.

## G.     THE SCIENTER REQUIREMENT IS WELL-MET

The Supreme Court recently defined "strong inference" in *Tellabs*, *supra*, concluding that a securities fraud complaint will survive a motion to dismiss under Federal *Rule of Civil Procedure* 12(b)(6) "only if a reasonable person would deem

the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 127 S.Ct. at 2510. Thus, a court now reviewing a complaint's scienter allegations under the PSLRA must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* at 2509. The court must determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*. A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference. See *Id.* at 2510. See also *Metzler Investment*, 540 F.3d at 1066.

Recently, however, the courts have found <u>bare allegations of falsely reported information probative under certain narrow conditions</u>. See *South Ferry*, 542 F.3d at 785 (summarizing the exceptions). Specifically, falsity may itself be indicative of scienter where it is combined with "allegations regarding a management's role in the company" that are "particular and suggest that the defendant had actual access to the disputed information," and where "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id.* at 786 (quotation marks and citation omitted).

For instance, the rule permits <u>general allegations about "management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements"</u> to create a strong inference of scienter when these allegations are buttressed with "detailed and specific allegations about management's exposure to factual information within the company." *Id.* at 785. To satisfy this standard, plaintiffs might include in their complaint "<u>specific admissions from top executives that they are involved in every detail of the company and that they monitored portions of the company's database,</u>" *Id.* (quoting *Daou*, 411 F.3d at 1022-23), a specific admission from a top executive that " '[w]e know exactly how much we have sold in the last hour around the world,'" *Id.* quoting *Nursing Home*, 380 F.3d at 1231, or other particular "details about the defendants' access to information within the company." *Id..* The exception also permits an inference of scienter where the information misrepresented is readily apparent to the defendant corporation's senior management. Where the defendants "must have known" about the falsity of the information they were providing to the public because the falsity of the information was obvious from the operations of the company, the defendants' awareness of the information's falsity can be assumed. See *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008). Nevertheless, reporting false information will only be indicative of scienter where the falsity is patently obvious — where the "facts [are] prominent enough that it would be `absurd to suggest' that top management was unaware of them." *Id.* at 989 quoting *Am. W. Holding Corp.* 320

F.3d 920, 943 (9th Cir. 2003) ["*America West*"], In *Berson,* the court found that the defendant company's misrepresentation of the status of stop-work orders was enough to infer scienter when the four stop-work orders had respectively "halted between $10 and $15 million of work on the company's largest contract with one of its most important customers," "halted $8 million of work," "caused the company to reassign 50-75 employees," and "required [Defendant] to complete massive volumes of paperwork." See *Id.* at 988.

<u>Here,</u> in the SAC ¶ 124, p. 23, lns 1-7,

"Defendants JAYESH, DEVESH, and VIMAL stated to such individuals that they're raising monies and capital at $0.83 to triple the money raised. (not for the sale to ONRIVA/ALINOR/JAFRI)" to

"investors, shareholders, employee, CEO, intermediaries, and related individuals and entities of PROFITPAY TECHNOLOGIES, INC., as well as its CEO TANMAY KAR."

The investors' names were clearly listed in the notice of errata that followed the Second-Amended Complaint. Thereafter, the Second-Amended Complaint states, that Defendants JAYESH, DEVESH and VIMAL made,

"intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents)."

In the SAC ¶ 133, p.24, lns 5-10 states,

"Subsequently without involving PLAINTIFF KAR, and/or any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy

the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10)."

Moreover, the Second-Amended Complaint, page 25, ¶¶ 141-142, lns 22-28:

"141. However, in 2022-2023, Defendants JAYESH, DEVESH, and VIMAL took the same capital/monies raised for PROFITPAY; and, were to execute the transfer PROFTIPAY to ONRIVA/ALINOR/ JAFRI.

142. The advertising to raise capital for PROFITPAY; and, then transferring it to third-party, ONRIVA/ALINOR/JAFRI, unbeknownst to investors, and shareholders were intentional…[intentionally omitted]."

Finally, for scienter, the loss causation in the Second-Amended Complaint was pled to be atleast $625,000 currently in the Comerica bank account, as well as the future promised earnings ranging from $50,000-$150,000 per investor in the SAC ¶ 144:

"144. There is a loss causation to Plaintiffs, i.e., Defendants JAFRI, JAYESH, DEVESH, and VIMAL's intentional deceit caused actually, proximately, directly, and indirectly, collectively, individually, and jointly, to plaintiffs, investors, and shareholders. This was at least $625,000, and any future promised earnings and appreciation of invested monies and capital of $50,000-$150,000 per investor and shareholder."

The Declaration of Tanmay Kar filed concurrently with this Opposition, as well as prior declarations further indicate the intentional scienter and falsity. The SAC ¶ 39, p.9, lns. 22-28 states,

"39….[intentionally omitted] JAYESH shared revenue run rate numbers of Onriva in a WhatsApp message which were overstated by twenty times (20X), not twenty percent (20%.)"

The SAC ¶ 38, p. 9, lns. 16-21 states,

"CTO of ONRIVA stated that JAFRI, the CEO do not like to talk about the revenue number but the top line bookings as Sales which to KAR was creating an impression that revenue is 20-30 times higher given the current business model generates four-to-five-percent (4%-5%) of revenue or even less from the airline and hotel bookings."

The SAC ¶ 38, p.8, lns. 1-3, states,

"KAR, the PROFITPAY stocks were sold to investors allegedly at the inflated price of $0.83 per share, and then fell to $0.06 per share."

The SAC ¶ 35, lns. 25-28, and next page, lns.1-3, state,

"35. Subsequently, without involving KAR in any negotiation with JAFRI, CEO of ONRIVA, as well as JAYESH e-mailed KAR a draft term sheet with transaction terms while suggesting that ONRIVA would buy the assets for about 660,000 shares each priced at about fifty dollars ($50) per share, five (5) times more than the price at the last round of about ten dollars ($10) per share."

In the SAC ¶ 37, Defendant JAYESH intentionally kept Plaintiff KAR in the dark, to defraud, deceive and manipulate him:

"37. JAYESH kept KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a year, would go public, and provide five-to-ten times (5-10X) exit to the Plaintiffs at the very least while pointing out to the success of TRIP ACTIONS (this is about twelve billion ($12 billion) dollar valuation while doing one billion dollars ($1 billion) in revenue.)"

Specifically, the Declaration of KAR, ¶ 5, p.10, details how Plaintiff KAR has personal knowledge that a Ponzi Scheme exists. Based on the financial expertise as a Chief Financial Officer (not only a percipient witness), Tanmay Kar, discussed how ProfitPay Technologies, Inc. is more evidentiary of a purported Ponzi scheme than

any ordinary startup. The Board, specifically, Defendant JAYESH, as a top-management Board member, had knowledge that,

> "Jay raised money at an astronomically high valuation pressuring people to invest by providing false information, lied to them about the Company's prospects all along with false newsletters and later he ignored the securities law including the change of control automatic conversion provision in SAFE agreement. The implied value of SAFE investors to be at minimum $3.42 (roughly 4x of $0.83 cent at Series A of $25 million to $100 million valuation cap) to $0.022 cent if they were to issue the shares at the same value. Instead, he just issued himself 80% of the Company and passed a Board resolution suggesting none of those stuff matters. There was no prior discussion, no shareholder vote and no actual steps to even make that effective while acting himself with no executive responsibility in the Company. Jay was a non-Executive Board member along with two other family members. This was done over 5 minutes of conversations with me without any due process and healthy arguments and counter arguments." [Declaration of KAR, page 6, ¶ 12].

Then, the other Board members, Defendants VIMAL and DEVESH had knowledge as top-management executives, collectively and jointly, that Defendant JAYESH was engaged in such intentionally deceptive and fraudulent actions towards ProfitPay Technologies, Inc., Tanmay Kar, and investors.

In this case, Defendant JAYESH receiving large shares of the profit/cash raised from investors/percentage of ownership of the corporation, ProfitPay Technologies, Inc. is all indicative in favor of a strong inference of scienter. For instance, in the Second-Amended Complaint, it states "whereby according to JAYESH he owns now 13% of the Company's shares." [SAC, ¶ 46]. See *America West*, *supra*, 320 F.3d at 944. In *America West*, the court stated that because "none of the [defendant's] executive officers received options awards in 1997 . . . [but defendant] awarded

[thousands of options to executive officers] in March 1998 [for performance allegedly increased by misrepresentations] . . . a strong inference of scienter can be inferred from Plaintiffs' allegations." *Id*.; see also *Tellabs*, 127 S.Ct. at 2511 ["[P]ersonal financial gain may weigh heavily in favor of a scienter inference."].

Hence, the intentionality of specifically alleging scienter is well-pled and met in the Second-Amended Complaint, and related documents that this Honorable Court could take judicial notice of.

II.   THE FIRST TO FIFTH CAUSES OF ACTION ARE WELL-PLED; SPECIFICALLY, THE FRAUD CAUSE OF ACTION PLED WITH SPECIFICITY AND PARTICULARITY.

Defendants do not object to any and all of the First to Fifth Causes of Action in the Second-Amended complaint. This includes the Fraud Cause of Action that has a basis to provide federal question jurisdiction to Plaintiffs. Defendants only object to the sixth cause of action, Securities & Investments Fraud, which is an alternate basis for federal question jurisdiction. Thus, for the First to Fifth Causes of Action, the Court must take as true all factual allegations that were well-pled, and provide notice-pleading to Defendants under Fed. *Rul. Civ. Proc. Rule* 8(A).

III.   PLAINTIFFS' REQUEST SANCTIONS IN THE AMOUNT OF $10,500 AGAINST DEFENDANTS' ATTORNEYS MIKE VAN NIEKERK AND MICHAEL STEBBINS FOR THEIR FAILURE TO COMPLY WITH SAFE-HARBOR REQUIREMENT PURSUANT TO FED. *RUL. CIV. PROC. RULE* 11

Plaintiffs request non-FRCP sanctions in the amount of <u>$10,500</u> against attorneys Mike Van Niekerk and Michael Stebbins. This is for the filing of the prior

Objection, as well as the MTD with requesting frivolous Rule 11 sanctions without the Defendants' attorneys having met the 21-day safe-harbor rule. The attorneys are properly identified on the caption page with the monetary sanctions listed on the face page as well. The attorneys, who're well-experienced, must have proceeded with a MOTION TO REMAND. However, they have only filed an Objection.

Even when there was a court order, that does not supersede the 21-day safe-harbor requirement that the Legislature envisioned. Defendants' attorneys had over 21 days to file the MTD from the date the Order was issued to file a Second-Amended Complaint, and a subsequent Opposition. Yet, Defendants' attorneys did not. Thus, the Rule 11 sanctions requirement is not met. For this, Plaintiffs request $10,500 at reasonable attorneys' fees of $650 per hour for over twelve hours to research and draft this Opposition, confer with client at about one (1) hour, as well as the Objection at over three (3) hours for this high-profile, multi-party securities fraud litigation.

IV.   DEFENDANTS HAVE FAILED TO COMPLY WITH THE 21-DAY SAFE HARBOR AND PRESENTMENT REQUIREMENT; FED. *RUL. CIV. PROC. RULE* 11 SANCTIONS ARE NOT WARRANTED.

Defendants failed to comply with the 21-day safe harbor and presentment rule. The attorneys for Defendants should have either presented their motion to dismiss, and/or notified the undersigned counsel to withdraw the second-amended complaint, and/or SAC as they call it. However, the attorney for defendants did not. Thus, the Rule 11 sanctions are not available to Defendants at this juncture. The Courts in the

Ninth Circuit have ruled on this issue that Defendants and its attorneys claim under

Fed. *Rul. Civ. Proc. Rule* 11:

> "First, no sanctions are available under FRCP 11 because Klahn failed to comply with the "safe harbor" provision of that rule. Before a party may file or present a motion for sanctions to the court, FRCP 11(c)(2) requires that the motion must first be served under FRCP 5 and then allow the party against whom the sanction is sought 21 days to correct the alleged violation. Klahn did not do that. Thus, his motion for sanctions pursuant to FRCP 11 must be denied as procedurally defective.

> Second, by its terms, FRCP 11 applies to "[r]epresentations to the Court" made in "presenting to the court a pleading, written motion, and other paper whether by signing, filing, submitting or later advocating it." Accordingly, it "provides two independent bases for the imposition of sanctions: a frivolous pleading and a pleading filed for an improper purpose." Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks, 915 F2d 1301, 1305 (9th Cir 1990). It is inapplicable to other conduct not involving a document submitted to the court, including alleged violations of court orders. Ali v. Tolbert, 636 F3d 622, 626 27 (DC Cir 2011) (conduct not involving a document submitted to the court is not sanctionable under FRCP 11); Metz v. Unizan Bank, 655 F3d 485, 491 (6th Cir 2011) (Rule 11 does not apply to the disregard of court orders); O'Brien v. Alexander, 101 F3d 1479, 1489 (2nd Cir 1996) (oral advocacy not flowing directly from documents filed with the court do not fall within the scope of FRCP 11) *Klahn v. Clackamas Cnty. Bank* (D. Or., Jan. 2, 2014, Civil No. 3:13 CV-621-ST) [pp. 2-3].

> "It is well established in the Ninth Circuit that Rule 11 sanctions are not available without compliance with the 21-day " safe harbor" provision. The failure to comply with the requirements of Rule 11 is both (1) a legal contention not warranted by existing law; and (2) a representation to the court interposed    for an improper purpose." *Eon-Net, L.P. v. Flagstar Bancorp, Inc.* (W.D. Wash. 2006) 239 F.R.D. 609, 619.

For example, intervenors added to the complaint are not under the purview of

the Fed. *Rul. Civ. Proc. Rule* 11. The attorneys for Defendants have not complied with

the 21-day presentation and notice period of the safe-harbor rule under Fed. *Rul. Civ.*

*Proc. Rule* 11. The Order of the Court is separate from the Defendants' attorneys to meet the safe-harbor and presentment requirement of *Rule* 11. As soon as the order was published on the docket, the Defendants' attorneys, Mike and Mark should have notified of their intent via electronic-mail to the undersigned counsel for Plaintiffs to withdraw the second-amended complaint. However, defendants' attorneys did not. Defendants' attorneys did not abide by the strict rule of the 21-day safe-harbor that *Rule* 11 requires. Thus, that entire demand of sanctions by Defendants' attorneys under Fed. *Rul. Civ. Proc. Rule* 11 does not apply in this specific instance.

V.   DEFENDANTS JAYESH, DEVESH, AND VIMAL ARE EACH INDIVIDUALLY LIABLE FOR VIOLATIONS OF SECTION 10(B) AS WELL AS SECTION 20(A), BECAUSE EACH IS A CONTROLLING INDIVIDUAL.

Section 20(a) of the Act makes certain "controlling" individuals, such as Defendants Jayesh, VIMAL, and Devesh also liable for violations of section 10(b) and its underlying regulations. Specifically, section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

Thus, a defendant board member of a corporation [such as Defendant Jayesh and Defendant VIMAL] who has violated the securities laws will be jointly and severally liable to the plaintiffs Tanmay Kar and ProfitPay Technologies, Inc., as long as the plaintiffs demonstrate "a primary violation of federal securities law" and that

"the defendant exercised actual power or control over the primary violator." [such as

Defendant Jayesh]. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*

*Am. W. Holding Corp.*, *supra*, (quoting *Howard v. Everex Sys., Inc.,* 228 F.3d 1057,

1065 (9th Cir. 2000)) (quotation marks omitted); *Paracor Fin., Inc. v. Gen. Elec.*

*Capital Corp.,* 96 F.3d 1151, 1161 (9th Cir. 1996).

<u>CONCLUSION</u>

Thus, the Second-Amended Complaint should survive in federal court as to

federal question jurisdiction as to all causes of action, including, the Sixth Cause of

Action, Securities & Investment Fraud, and the Second Cause of Action, Fraud.

*Respectfully submitted*,

DATED:  August 28, 2023

/S/ Reshma Kamath

LAW OFFICE OF RESHMA KAMATH
Reshma Kamath,
Counsel for Plaintiff TANMAY KAR;
PROFITPAY TECHNOLOGIES, INC.;
JOHN DOE INTERVENORS

OPPOSITION

<u>PROOF OF SERVICE</u>
F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

      I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and for purposes of the service e-mail address is reshmakamath2021@gmail.com for electronic service. On August 28, 2023, I served the following document(s), by method(s) indicated below, on the parties in this action: SEE ATTACHED SERVICE LIST.
///
PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF THE OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS (MTD); REQUEST FOR SANCTIONS OF $10,500 AGAINST DEFENDANTS' ATTORNEYS MARK SEBBINS AND MARK VAN NIEKERK
///
<u>ELECTRONIC SERVICE</u>
In electronically transmitting courtesy copies of the document (s) listed above to the email-address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. SECTION 1010.6.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on August 28, 2023.

<u>*/s/ Reshma Kamath*</u>
Reshma Kamath

<u>SERVICE LIST</u>

| MICHAEL W. STEBBINS, SBN 138326<br>MARC G. VAN NIEKERK, SBN 201329<br>SILICON VALLEY LAW GROUP<br>1 North Market Street, Suite 200<br>San Jose, CA 95110<br>Telephone: (408) 573-5700<br>Facsimile: (408) 573-5701<br>Email: mws@svlg.com; mvn@svlg.com | Attorneys for Defendants ALINOR HOLDINGS, INC. d/b/a ONRIVA, JAYESH PATEL, DEVESH PATEL, and, VIMAL PATEL |
| --- | --- |

1

PROOF OF SERVICE

F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

2

3

        I am employed in the County of San Mateo, California. I am over the age of

4

18, and not a party to this action. My business address is: 700 El Camino Real Suite

120, #1084, Menlo Park, CA 94025, and for purposes of the service e-mail address

5

is reshmakamath2021@gmail.com for electronic service. On August 28, 2023, I

6

served the following document(s), by method(s) indicated below, on the parties in

this action: SEE ATTACHED SERVICE LIST.

7

///

8

PLAINTIFFS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT

OF THE OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS (MTD);

9

REQUEST FOR SANCTIONS OF $10,500 AGAINST DEFENDANTS'

10

ATTORNEYS MARK SEBBINS AND MARK VAN NIEKERK

11

///

USPS MAIL SERVICE

12

        Via United States Mail: I placed the envelope(s) for collection and mailing,

13

following our ordinary business practices. I am readily familiar with this business's

practice for collecting and processing correspondence for mailing. On the same day

14

that correspondence is placed for collection and mailing, it is deposited in the

15

ordinary course of business with the United States Postal Service, in a sealed

envelope with postage fully prepaid.

16

///

17

I declare under penalty of perjury under the laws of the State of California and the

United States of America that the above is true and correct. Executed on August 28,

18

2023.

19

20

*/s/ Reshma Kamath*

Reshma Kamath

21

22

SERVICE LIST

| | |
|---|---|
| VAJID JAFRI,<br>1065 E. HILLSDALE, SUITE 215<br>FOSTER CITY CA 94404<br>United States | Via USPS MAIL SERVICE<br>Defendant, *In propria persona* |

23

24

25

26

27

28

33
