1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

8   **TANMAY KAR, ET AL.**

9            Plaintiffs,

10      v.

11   **PATEL, ET AL.,**

12            Defendants.

Case No.: 4:23-cv-2064-YGR

**ORDER GRANTING THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE;**

**ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED**

Re: Dkt. No. 13, 33, 60, and 74

Pending before the Court is defendants' Motion to Dismiss the Second Amended Complaint ("SAC") for lack of subject-matter jurisdiction. (Dkt. No. 74, "MTD.") In addition, the parties filed cross motions for sanctions. (*Id.* at 13–16; Dkt. No. 79.) Defendants, in particular, move for sanctions against plaintiffs' counsel, Reshma Kamath (Cal. Bar No. 333800), for violating her professional obligations under Fed. R. of Civ. P. 11 and the Private Securities Litigation Reform Act ("PSLRA"). (Dkt. No. 79 at 13–16.) Having carefully considered the SAC and parties' briefing, and for the reasons explained more fully below, the Court **GRANTS** the second motion to dismiss **WITH PREJUDICE** and **STRIKES** the cross-motions for sanctions as improperly filed.[1] In light of the PSLRA's mandate against the frivolous filing of securities fraud claims, the Court **ORDERS** Ms. Kamath to **SHOW CAUSE** why she should not be sanctioned under that legal framework.

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

United States District Court
Northern District of California

# I.    MOTION TO DISMISS

## A.    BACKGROUND

The Court incorporates the background from its Order granting defendants' motion to dismiss plaintiffs' First Amended Complaint ("FAC"). (Dkt. No. 68.) Relevant here, plaintiffs then argued that their FAC, which stated only state law claims, contained a federal "securities" violation. (*Id.*) The Court rejected this argument and dismissed the FAC for lack of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) or, in the alternative, failure to join an indispensable party under Fed. R. of Civ. P. 19. (*Id.*) During a status conference, plaintiffs' counsel urged the Court to allow plaintiffs the opportunity to amend. The Court obliged but reminded counsel she must comply with Rule 11 in doing so.

Plaintiffs then filed a SAC, this time explicitly adding a federal claim for securities and investment fraud in violation of 18 U.S.C. § 78u-4(b)(2) as the final, sixth claim.[2] (Dkt. No. 64.) The SAC claims federal jurisdiction through this federal claim and no other.[3] (*Id.* ⁋ 12.)

For this claim, plaintiffs allege that defendant Jayesh Patel induced Mr. Kar to join ProfitPay as its Chief Financial Officer ("CFO") under false pretenses. (*Id.* ⁋⁋ 15–19.) Mr. Kar "accepted the position of CFO on the understanding that he would be receiving a 4% ownership interest in a firm that would have $53 million in the bank and would have a $700 million valuation." (*Id.* ⁋ 19.) Instead, once he accepted the position, the SAC alleges that Mr. Kar realized the company was in a "dire situation." (*Id.* ⁋ 20.) This was, at least in part, because the prior chief

---

[2] Ms. Kamath also claims there are various, other "intervenor" plaintiffs. She filed numerous "intervenor complaints" without leave of the Court as is required under Fed. R. of Civ. P. 24. (Dkt Nos. 38, 43, 44, 45, 46, 47, 48, and 49.) Only one of these has been withdrawn (Dkt. No. 38), and that is only after the intervenor found substitute counsel that correctly noted the complaint should not have been filed without a motion in the first place. The Court therefore STRIKES the remaining intervenor complaints and does not consider their allegations in this Order. (Dkt. Nos. 43, 44, 45, 46, 47, 48, and 49.)

[3] Plaintiffs invoke federal jurisdiction under 28 U.S.C. § 1332, which is for diversity jurisdiction, instead of 28 U.S.C. § 1331, which is for federal question jurisdiction. Because plaintiffs' sole claim for federal jurisdiction is the violation of a federal statute, the Court assumes that plaintiffs meant to establish jurisdiction under Section 1331.

United States District Court
Northern District of California

executive officer ("CEO") was allegedly "going to jail after killing three people in a DUI accident wherein the prior CEO even fraudulently reported the accident as if it was during a business work and asked the insurance company to pay $2.0 million to help settle the case."[4] (*Id.* ¶ 17.) After Mr. Kar started working at the company, he realized that defendants meant to sell ProfitPay to a company they owned, Onriva, on "unduly favorable" terms. (*Id.* ¶ 50.) Without discussing these terms first with Mr. Kar, plaintiffs allege that defendants created an "Asset Purchase Agreement" to buy ProfitPay's assets "at about $50 a share, five (5) times more" than they were worth. (*Id.* ¶ 56.) In another paragraph, however, plaintiffs allege that this would "dilute the value of PROFITPAY's other Plaintiffs, including KAR, by 80%." (*Id.* ¶ 49.)

Relevant here, the SAC nowhere alleges that Mr. Kar purchased stock, or any other form of security, from ProfitPay or Onriva. Initially, the SAC set out a short list of investors in ProfitPay. (*Id.* ¶ 140.) Mr. Kar's name was not on this list. Plaintiffs' counsel then filed an "errata" asking that this short list of investors be replaced with a much longer one. (Dkt. No. 67.) This longer list of investors is several pages long but, again, nowhere mentions Mr. Kar. (*Id.*)

Defendants move to dismiss the whole complaint under Fed. R. of Civ. P. 12(b)(6), this time on the basis that plaintiffs lack standing to pursue their securities fraud claim and, in any case, have failed to state such a claim.

## B.   LEGAL FRAMEWORK

A motion to dismiss under Fed. R. of Civ. P. 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.[5] *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts

---

[4] All quoted grammatical and spelling errors are intentionally so written.

[5] Defendants' motion on this point is unclear. On the one hand, defendants state that they are moving to dismiss for lack of Article III standing. Such motions, however, must be brought under Fed. R. of Civ. P. 12(b)(1), not Rule 12(b)(6). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Moreover, in making their argument, defendants focus on whether plaintiffs have met the injury requirements of a statute, Section 10(b), not the U.S. Constitution. For that reason, the Court focuses on whether plaintiffs lacked statutory, rather than Article III, standing. The Court notes, however, that in this case the result under either analysis would be the same—plaintiffs did not state an injury for the federal claim brought.

alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material facts are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). That requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.*

Securities fraud cases must meet the requirements of Fed. R. of Civ. P. 9(b). *In re Apple Inc. Securities Litig.*, 19-cv-2033-YGR, 2020 WL 2857397, at *5 (N.D. Cal. June 2, 2020). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. of Civ. P. 9(b). Rule 9(b) requires a plaintiff to state "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).

Moreover, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b). The PSLRA similarly requires particularity about scienter: "in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* These requirements, the Ninth Circuit has said, are "formidable." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008), *see* 15 U.S.C. § 78u–4(b)(2).

United States District Court
Northern District of California

**C.    ANALYSIS**

Section 10(b) of the Securities Exchange Act of 1934 prohibits the use of "any manipulative or deceptive device or contrivance" related to the purchase or sale of securities when the use violates the regulations promulgated by the Securities and Exchange Commission. 15 U.S.C. § 78j(b). Under the operative regulation, it is unlawful for any person "[t]o make untrue statements of fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

"To be viable, a claim brought under § 10(b) and Rule 10b-5 must contain six essential elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon misrepresentation or omission; (5) economic loss; and (6) loss causation." *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1274 (9th Cir. 2017) (citation and internal quotation marks omitted).

This complaint fares no better than the previous one. At its most fundamental level, defendants correctly argue that plaintiffs lack standing because they never allege that they purchased a security, much less one in reliance of a misrepresentation from any of the involved companies, as required under Section 10(b). In their opposition, plaintiffs are silent and do not respond to this argument. They are therefore deemed to concede it. For this reason alone, the Court dismisses the SAC. Without statutory standing to bring their federal claim, plaintiffs have once again failed to establish federal jurisdiction, this time under 28 U.S.C. § 1331.

In addition to the lack of standing, plaintiffs have failed to specify what statements they are alleging to have been misleading or the facts underlying the conclusion that the defendants "demonstrated a strong inference of scienter." (SAC ¶ 123.) Neither is sufficient. Finally, the SAC leaves it unclear whether plaintiffs have suffered any damages. In one paragraph, plaintiffs say that ProfitPay's stock was sold at an "inflated price of $0.83" per stock but then dropped to "$0.06." (SAC ¶ 132.) In the very next paragraph, however, plaintiffs allege that defendants offered to pay ProfitPay's assets for "$50 a share, five (5) times more than the price at price at the last round of

1  about ten dollars ($10)." (*Id.* ¶ 133.) If that is so, then plaintiffs fail to explain how the sale of
2  ProfitPay to Onriva would damage them.

3      For those reasons, the Court **DISMISSES** plaintiffs' Second Amended Complaint. Given
4  plaintiffs' concessions, the allegations in the SAC, and the Court's previous admonishment, it does
5  so **WITH PREJUDICE.** Plaintiffs are, again, reminded that they may file their claims in state court
6  instead.

7  **II.     MOTION FOR SANCTIONS**

8      Defendants request sanctions against plaintiffs' counsel, Ms. Kamath, under both Rule 11
9  and the PSLRA. Plaintiffs cross-move for Rule 11 sanctions on the grounds that defendants failed
10  to comply with Rule 11's safe-harbor requirement.

11      **A.     LEGAL FRAMEWORK**

12      Federal rules provide that by "presenting to the court a pleading, written motion, or other
13  paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented
14  party certifies that to the best of the person's knowledge, information, and belief, formed after an
15  inquiry reasonable under the circumstances," the papers submitted are not (1) "presented for any
16  improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of
17  litigation;" (2) "the claims, defenses, and other legal contentions are not warranted by existing law
18  or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing
19  new law;" (3) "the factual contentions have evidentiary support or, if specifically so identified, will
20  likely have evidentiary support after a reasonable opportunity for further investigation or
21  discovery;" or (4) "the denials of factual contentions are warranted on the evidence or, if
22  specifically so identified, are reasonably based on belief or a lack of information." Fed. R. of Civ.
23  P. 11(b)(1)–(4).

24      Where that does not occur, the Court may, on its own, order an attorney "to show cause why
25  [specified] conduct . . . has not violated Rule 11(b)." Fed. R. of Civ. P. 11(c)(3).  Alternatively, a
26  motion for sanctions may be made but it "must be . . . separate[] from any other motion." Fed. R. of
27  Civ. P. 11(c)(2). Such a motion must not be "filed or presented to the court if the challenged paper,
28  claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after

service." *Id.* The PSLRA has its own sanctions provision for abusive litigation. "[U]pon final adjudication of the action," a court must "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 78u-4(c)(1). If a court makes a finding that an attorney "violated any requirement of Rule 11(b)" then the court must impose Rule 11 sanctions. *Id.* § 78u-4(c)(2). It can only do so, however, after giving that attorney "notice and an opportunity to respond." *Id.*

**B.   ANALYSIS**

**1.   Defendants' Conduct**

Defendants concede that they did not follow Rule 11's 21-day safe harbor requirement.[6] They say this is because the Court did not give them enough time to complete that requirement and comply with the Court's order that their motion to dismiss be filed 14 days after the SAC. This does not save their sanctions motion, however. Under Rule 11, sanctions motions must be made separately from any other. Because defendants included their request for sanctions within their motion to dismiss, the Court **STRIKES** defendants' motion for sanctions.

That does not end the matter, however. Under the PSLRA, the Court must make specific findings regarding attorneys' compliance with each Rule 11(b) requirement "upon final adjudication." Because the Court dismisses the SAC with prejudice, terminating plaintiffs' case under the PSLRA, it now makes preliminary findings.

The Court starts with defendants. Counsel for defendants have complied with Rule 11(b). They have filed two motions to dismiss—neither have been made for any improper purpose but instead to protect themselves from the underlying allegations. The arguments made in the motions have been warranted by existing law, upon which the motions were granted. Defendants, at this early stage, have not made any factual contentions or denials but rather responded to plaintiffs' allegations. Plaintiffs' motion for sanctions is denied. (Dkt. 79.)

---

[6] Notably, plaintiffs complain of the defendants' failure in this regard seeking sanctions of $10,500. The complaint rings hollow as the plaintiffs do not indicate that they would have used the safe harbor to withdraw and/or correct the SAC.

United States District Court
Northern District of California

### 2.    Plaintiffs' Conduct

With respect to plaintiffs' counsel, Ms. Kamath, the Court issues an order to show cause why sanctions should not be imposed based on the list of concerns identified below. The Court repeats here that it cautioned counsel from proceeding after the first motion to dismiss. The Court begins with the substantive issues, then moves to the procedural failings.

While the Court takes no position on the merit of plaintiffs' claim generally, the potential basis for sanctions is plaintiffs' pursuit of a *federal* claim specifically.

By way of background, plaintiffs moved for a preliminary injunction seeking expedited relief while defendants moved to dismiss the entire case for lack of diversity jurisdiction. The Court calendared a status conference to expedite resolution. During the status conference, the Court warned Ms. Kamath that defendants' motion was well-taken. Ms. Kamath argued to the Court the case belonged in federal court because federal law only requires minimal diversity, that is, diversity between at least one plaintiff and one defendant. The Court informed her that her position had been soundly rejected by federal courts.

In response, instead of reassessing the basis for asserting the claims in federal court, Ms. Kamath filed a voluntary dismissal of a key defendant to achieve "complete diversity" for jurisdiction purposes. (Dkt. No. 41.) As defendants rightly pointed out, because Onriva is a party to the alleged agreement at issue, it could not be voluntarily dismissed under Fed. R. of Civ. P. 19. (Dkt. No. 51.) Ms. Kamath next argued that the then-operative complaint stated a securities fraud claim. (Dkt. No. 52.) She did so despite the fact that she had never previously argued that plaintiffs had a securities claim, did not state a claim for securities fraud in the then-operative complaint, and had not claimed jurisdiction on the basis of a federal claim. (Dkt. No. 5.)

The Court granted defendants' motion to dismiss the FAC for lack of diversity jurisdiction or failure to join a necessary party under Fed. R. of Civ. P. 19. (Dkt. No. 62.) The Court also rejected Ms. Kamath's securities fraud argument as meritless. (*Id.*) Plaintiffs urged the opportunity to amend which the Court granted but warned Ms. Kamath that a claim should only be brought "consistent with [her] Rule 11 obligations." (*Id.*)

1   Again, instead of reconsidering the merits of bring her case in federal court, and despite a

2   second warning, Ms. Kamath once again filed a complaint with a meritless claim for federal

3   jurisdiction. As explained above, the SAC is devoid of any federal claim. Further, Ms. Kamath

4   answered defendants' motion for sanctions with a baseless motion for sanctions of her own,

5   engaging in tit-for-tat litigation. (Dkt. 79.)

6   Aside from the substantive issues, Ms. Kamath has repeatedly violated procedural rules.

7   Specifically:

8   • Ms. Kamath noticed her motion for a preliminary injunction incorrectly so many

9   times under the Northern District of California's Civil Local Rule 7-2 that the Court

10   finally had to point her to the correct noticing procedure in an Order. (Dkt. No. 32.)

11   • She filed multiple intervenor complaints without the Court's leave, as required by

12   Fed. R. of Civ. P. 24. (Dkt. Nos. 38, 43–49.)

13   • She supplemented her SAC without filing a motion under Fed. R. of Civ. P. 15(d).

14   (Dkt. No. 67.)

15   • She filed various improper notices—a notice of removal of a different state court

16   case, a "writ of certiorari" of that same state court case, and then an objection to

17   defendants' concern that a separate state court case cannot get removed directly into

18   a federal one. (Dkt. Nos. 71, 76, and 78.)

19   • Ms. Kamath ignored the Court's Standing Order and failed to file a chart

20   summarizing the allegedly false statements upon which plaintiffs' securities fraud

21   claim rested.

22   Based upon the foregoing, Ms. Kamath is **ORDERED TO SHOW CAUSE** why the collective

23   totality of actions above should not warrant sanctions, especially in light of the PSLRA's mandate

24   to deter the filing of frivolous securities claims.

25   **III.   CONCLUSION**

26   For the reasons stated herein, the Court **GRANTS WITH PREJUDICE** the motion to dismiss

27   based on lack of subject-matter jurisdiction and **DENIES** plaintiffs' motion for sanctions against

28

United States District Court
Northern District of California

defendants. Consequently, as the Court is without jurisdiction, it cannot grant plaintiffs' requests for injunctive relief.

With respect to the **ORDER TO SHOW CAUSE,** Ms. Kamath shall submit a written response by no later than **Monday, October 23, 2023.**  Defendants may file their own response no later than **Monday, October 30, 2023**. Any reply by Ms. Kamath shall be filed by **Monday, November 6, 2023**. The Court shall then have an in-person hearing on sanctions on **Tuesday, November 14, 2023,** at 1:00 p.m. in the United States District Court, Courtroom One, Oakland, California.

This terminates Dkt. No. 13, 33, 60, and 74.[7]

**IT IS SO ORDERED**.

Date: **October 12, 2023**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] The Administrative Request to seal (Dkt. No. 55) is granted as it is unnecessary to the Court's analysis. The request to reschedule is denied as moot. (Dkt. No. 60.)