**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for **Plaintiff PROFITPAY TECHNOLOGIES, INC. & TANMAY KAR**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| PROFITPAY TECHNOLOGIES, INC.; a corporation; TANMAY KAR, an individual, <br><br> Plaintiffs <br><br> v. <br><br> ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual; and DOES 1-10, inclusive, <br><br> Defendants | Case Number: 4:23-cv-02064-YGR <br><br> [*Assigned to Honorable District Court Judge Yvonne Gonzalez-Roger*] <br><br> [*Related defendants' state court Santa Clara County, case no. 23CV418087 initiated on June 22, 2023; and, Superior Court of California, County of Alameda, case no., 23CV044134*] <br><br> **NOTICE OF FILING A SECURITIES & EXCHANGE COMMISSION COMPLAINT AGAINST DEFENDANTS ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual** <br><br> **DEMAND FOR JURY TRIAL.** |

  TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:

*PLEASE TAKE NOTICE* the SECURITIES & EXCHANGE COMMISSION COMPLAINT against DEFENDANTS ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual was filed as attached **EXHIBIT A** incorporated via reference, and attached hereto.

///

| | |
|---|---|
| **DATED: October 12, 2023** | **LAW OFFICE OF RESHMA KAMATH** |
| | */S/ Reshma Kamath* |
| | _____ |
| | Reshma Kamath, |
| | Counsel for Plaintiffs |
| | PROFITPAY TECHNOLOGIES, INC.; |
| | AND TANMAY KAR |

# PROOF OF SERVICE
### F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and for purposes of the service e-mail address is reshmakamath2021@gmail.com for electronic service. On October 12, 2023, I served the following document(s), by method(s) indicated below, on the parties in this action: SEE ATTACHED SERVICE LIST.

///

**NOTICE OF FILING A SECURITIES & EXCHANGE COMMISSION COMPLAINT AGAINST DEFENDANTS ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual**

///

**ELECTRONIC SERVICE**

In electronically transmitting courtesy copies of the document (s) listed above to the email-address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. SECTION 1010.6.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on October 12, 2023.

*/s/ Reshma Kamath*
Reshma Kamath

**SERVICE LIST**

| | |
|---|---|
| MICHAEL W. STEBBINS, SBN 138326<br>MARC G. VAN NIEKERK, SBN 201329<br>SILICON VALLEY LAW GROUP<br>1 North Market Street, Suite 200<br>San Jose, CA 95110<br>Telephone: (408) 573-5700<br>Facsimile: (408) 573-5701<br>Email: mws@svlg.com; mvn@svlg.com | Attorneys for Defendants ALINOR HOLDINGS, INC. d/b/a ONRIVA, JAYESH PATEL, DEVESH PATEL, and, VIMAL PATEL |

# PROOF OF SERVICE
## F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and for purposes of the service e-mail address is reshmakamath2021@gmail.com for electronic service. On October 12, 2023, I served the following document(s), by method(s) indicated below, on the parties in this action: SEE ATTACHED SERVICE LIST.

///

**NOTICE OF FILING A SECURITIES & EXCHANGE COMMISSION COMPLAINT AGAINST DEFENDANTS ALINOR HOLDINGS, INC. d/b/a ONRIVA, a corporation; JAYESH PATEL, an individual; VIMAL PATEL, an individual**

///

**USPS MAIL SERVICE**

Via United States Mail: I placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

///

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on October 12, 2023.

*/s/ Reshma Kamath*
Reshma Kamath

**SERVICE LIST**

| VAJID JAFRI,<br>1065 E. HILLSDALE, SUITE 215<br>FOSTER CITY CA 94404<br>United States | Via USPS MAIL SERVICE<br>Defendant, *In propria persona* |
|---|---|



# EXHIBIT A

**Tips, Complaints, and Referrals**
Summary Page - Submitted Externally

**Submission Number 16971-378-393-301 was submitted on Friday, October 13, 2023 at 01:09:45 AM EDT**

**This PDF was generated on Friday, October 13, 2023 at 01:10:42 AM EDT**

Thank you for contacting the United States Securities and Exchange Commission.  This automated response confirms that your submission has been received successfully.  We are always interested in hearing from the public, and your submission will be given careful consideration in view of the Commission's overall responsibilities under the federal securities laws.  Please note, however, that it is the Commission's policy to conduct its investigations on a non-public basis in order to preserve the integrity of its investigative process.  Subject to the provisions of the Freedom of Information Act, we cannot disclose to you any information which we may gather, nor can we confirm the existence or non-existence of an investigation, unless such information is made a matter of public record in proceedings brought before the Commission or the courts.  Therefore, this may be the only response that you receive.  If you want to learn more about how the Commission handles inquiries or complaints, please visit http://www.sec.gov/complaint/info_tipscomplaint.shtml.

## What is your complaint about?

**Q: Please select the option that best describes your complaint.**

**A:** Fraudulent investment scheme, such as a Ponzi scheme or the promise of high-yield returns

**Q: Please select the specific category that best describes your complaint.**

**A:** Ponzi / pyramid scheme

**Q: If a return on investment of any amount was guaranteed, what percentage was guaranteed?**

**A:** Unknown

**Q: If you are alleging offering fraud, how was the offer made?**

**A:** Personal message (email, voicemail, phone call)

**Q: Is this supplemental information to a previous complaint?**

**A:** No

**Q: In your own words, describe the conduct or situation you are complaining about.**

**A:** UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION PROFITPAY TECHNOLOGIES, INC.; a corporation; AND, TANMAY KAR, an individual, CASE NO.: 4:23-cv-02064-YGR SECOND-AMENDED COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES: I. FRAUDULENT INDUCEMENT; II. BREACH OF FIDUCIARY DUTY; III. BREACH OF CONTRACT; IV. FRAUD; V. NEGLIGENT MISREPRESENTATION; AND, VI. SECURITIES & INVESTMENT FRAUD. DEMAND FOR JURY TRIAL Plaintiffs, v. ALINOR HOLDINGS, INC. d/b/a ONRIVA; JAYESH PATEL; DEVESH PATEL; VIMAL PATEL; VAJID JAFRI; AND, DOES 3-10, INCLUSIVE, Defendants. TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD, HEREIN: LAW OFFICE OF RESHMA KAMATH Reshma Kamath, Cal. Bar No. 333800 700 El Camino Real, Suite 120, #1084 Menlo Park, California 94025, United States Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com Counsel for Plaintiffs TANMAY KAR; PROFITPAY TECHNOLOGIES, INC.; JOHN DOE INTERVENORS Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 1 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 2 SECOND-AMENDED COMPLAINT FOR DAMAGES SECURITIES FRAUD COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF INTRODUCTION Pursuant to Section 11 of the Securities Act, Section 12 of the Exchange Act, Section 10(b) of the Exchange Act, and 10(b)(5), and/or 15 U.S.C. § 78u-4(b)(2), Plaintiffs TANMAY KAR, PROFITPAY TECHNOLOGIES, INC., (hereinafter, collectively, PLAINTIFFS) allege and purport the below securities fraud and other allegations against DEFENDANTS JAYESH PATEL, DEVESH PATEL, VIMAL PATEL, VAJID JAFRI, as well as ALINOR HOLDINGS, INC./ONRIVA; and DOES 3-10, inclusive: PARTIES 1. Plaintiff PROFITPAY TECHNOLOGIES, INC., (hereinafter, "PROFITPAY") is a corporation organized under the laws of the State of Delaware, having a principal place of business at 2603 Camino Ramon, Suite 200, San Ramon, CA 94583. 2. Plaintiff TANMAY KAR (hereinafter, "KAR") is the Chief Executive Officer and Chairman of the Board of PROFITPAY. 3. Defendant ALINOR HOLDINGS, INC., d/b/a Onriva is a corporation organized under the laws of the State of Delaware, having a principal place of business at 1065 E. Hillsdale, Suite 215, Foster City, CA 94404. ((hereinafter, "ONRIVA/ALINOR.") 4. Defendant JAYESH PATEL, (hereinafter, "JAYESH") is an individual who is also the CEO of Athena Hospitality Group, CEO and Founder of a newly formed fundraising platform Monriva Capital residing in either Kentucky or Tennessee, a board member and shareholder of PROFITPAY and, on information and belief, a principal at ALINOR/ONRIVA. JAYESH PATEL is also the Managing Member of all the LLCs which are used as the vehicles to secure investment from many small individual Plaintiffs such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia. Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 2 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 3 SECOND-AMENDED COMPLAINT FOR DAMAGES 5. Defendant DEVESH PATEL (hereinafter, "DEVESH,") is an individual who is also the nephew of JAYESH PATEL and Chief Operating Officer of Athena Hospitality Group, and Co-founder of newly formed Monriva Capital and residing Cincinnati, Ohio and a board member of PROFITPAY. 6. Defendant VIMAL PATEL (hereinafter, "VIMAL") is an individual who is also the Chief Compliance Officer of Athena Hospitality Group, and Co-founder of newly-formed Monriva Capital and residing in this district and a board member of PROFITPAY. 7. Defendant VAJID JAFRI (hereinafter, "JAFRI") is the purported owner of ALINOR/ONRIVA. 8. Plaintiffs are ignorant of the true names and capacity of defendants sued herein as DOES 3 – 10 inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe; and, based thereon allege that each of the fictitiously named defendants are responsible in some manner for the injuries to the Plaintiffs as alleged herein, and that such injuries as herein alleged were proximately caused by such defendants. 9. Whenever in this Amended Complaint an act or omission of a corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation

that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation. 10. Plaintiffs are informed and believe, and thereupon allege that at all times herein mentioned, the defendants were the agents, employees and/or servants, masters or employers of the remaining defendants and in doing the things herein after alleged, were acting within the course Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 3 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 4 SECOND-AMENDED COMPLAINT FOR DAMAGES and scope of such agency or employment, and with the approval and ratification of each of the other defendants. 11. Plaintiffs are informed and believe; and, thereon allege that each of the factiously named Defendant is responsible in some manner for the occurrences hereinafter alleged, and that Plaintiffs' injuries as herein alleged were proximately caused by the aforementioned Defendants. JURISDICTION & VENUE 12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, 15 U.S.C. § 78a et seq.; and 15 U.S.C. § 78u-4(b)(2). Specifically, under the Securities Act, Exchange Act, and Private Securities Litigation Reform Act of 1995 (PSLRA), the Plaintiffs allege the defendants engaged in and committed securities fraud, amongst other things. FACTUAL BACKGROUND 13. Plaintiffs TANMAY KAR, INVESTORS, and, SHAREHOLDERS, inter alia, have substantial investments made in PROFITPAY TECHNOLOGIES, INC., and have detrimentally relied on DEFENDANTS' reckless misrepresentation with intent to deceit and fraud in not disclosing the sale and purchase of PROFITPAY TO ALINOR/ONRIVA after Defendant raised over $625,000 in capital from each of the INVESTORS, and SHAREHOLDERS of SERIES A, SERIES B, SAFE, AND SAFE B-1 investors. This is located in PROFITPAY's Comerica bank account. 14. For more than twenty-four (24) years, Plaintiff KAR is a highly accomplished entrepreneur as Chief Executive Officer and Chief Financial Officer at a plethora of successful companies backed by prominent venture capital firms. 15. In October 2021, KAR was approached by a C-suite executive recruiter for JAYESH about a potential position at PROFITPAY. Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 4 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 5 SECOND-AMENDED COMPLAINT FOR DAMAGES 16. The recruiter for JAYESH told him that PROFITPAY had about seventy-five (75) people, revenue growing from about three-hundred and fifty-thousand dollars ($350,000) per month to one million dollars ($1.0 million) per month to ten million ($10 million) per month. The recruiter for JAYESH stated he was "about to secure a large funding round" and was "looking for a seasoned finance executive to spearhead the company's financial future." 17. KAR was initially hired as CFO of PROFITPAY, but JAYESH's intent was to induce KAR to become CEO, knowing that the prior CEO and founder of PROFITPAY was likely going to jail after killing three people in a DUI accident wherein the prior CEO even fraudulently reported the accident as if it was during a business work and asked the insurance company to pay $2.0 million to help settle the case. 18. PROFITPAY's prior CEO where Defendant JAYESH was the second largest shareholder and managing member of the three (3) LLCs with about two-hundred and twenty-five Plaintiffs, such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia, supplied false information to the recruiter and to and KAR that PROFITPAY had closed an investment for $50 million, putting PROFITPAY at a seven-hundred million dollar ($700) million valuation, when in fact the company barely had money to meet payroll. 19. Thus KAR, in detrimental reliance on the misrepresentation by the prior CEO with active participation of JAYESH as evidenced from the Newsletters that he has sent to all investors and shareholders, accepted the position of CFO on the understanding that he would be receiving a 4% ownership interest in a firm that would have $53 million in the bank and would have a $700 million valuation. 20. In an in-person meeting right after joining PROFITPAY that occurred in San Bruno, JAYESH did not disclose PROFITPAY's dire situation. JAYESH did not even disclose Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 5 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 6 SECOND-AMENDED COMPLAINT FOR DAMAGES that the prior CEO was in a DUI accident; instead, JAYESH cheered on the possible valuation numbers that the prior CEO was sharing. 21. Shortly, KAR learned from the prior CEO that he was hired to be the

CEO, because of the DUI accident. KAR then realized the dire state of PROFITPAY's finances, JAYESH turned around putting all the blame on the prior CEO, acted completely innocent, and pleaded with him to remain as CEO. 22. JAYESH pleaded with KAR to help to take control from the prior CEO and turn the company's business around, purchased certain assets together with VIMAL at fifty-percent (50%) discount while promising to personally invest up to one million dollars ($1 million) of his own funds into PROFITPAY to help achieve these objectives. 23. Defendant VIMAL also promised to invest additional funds in PROFITPAY. 24. Ultimately, however, JAYESH and VIMAL did not live up to their promise; and, did not invest further capital in PROFITPAY as agreed as part of the restructuring effort while ousting the prior CEO. 25. Despite agreeing to invest one million dollars ($1 million), regardless of the Company's progress and another one million dollars ($1 million) based on the Company's progress, not only did they not invest but they forced KAR to pay one-hundred thousand dollars ($100,000) to buy out one single individual Plaintiffs who was not happy. In having a Board that included three related parties, KAR had no choice but to agree. 26. In the ensuing months, KAR managed to turn around PROFITPAY's business, replacing the prior CEO, buying back the prior CEO's shares for the company, reducing more than $3 million in liabilities to nearly zero, replacing the employees, shutting down non-performing code, moving customers to a different platform, and finally achieving profitability for PROFITPAY while running the business as a sole employee while dealing with a seriously Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 6 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 7 SECOND-AMENDED COMPLAINT FOR DAMAGES stressful and volatile environment created by the prior CEO. The Company's financials were not kept in order, taxes could not be filed because of the lack of financial records, and dealing with back taxes which were not paid to the State. 27. Meanwhile, JAYESH was engaged in a Ponzi scheme at ALINOR/ONRIVA. 28. JAYESH, who in conversations has purported to be a "billionaire," "launching a multi-billion-dollar fund," and taking ONRIVA public in a matter of months has, in fact, been operating a fraudulent scheme to obtain investment at ONRIVA —and is attempting to gain control of PROFITPAY's assets in furtherance of the scheme. JAYESH, VIMAL and DEVESH have launched a fundraising platform Monriva Capital raising one billion dollars ($1.0 billion) in the end of the year 2022 to Defendants' successful scheme of raising money from a lot of innocent Plaintiffs. 29. In October 2022, JAYESH invited KAR to a party that JAYESH had hosted in Nashville, Tennessee. ONRIVA executives attended the party. KAR could not attend the function for personal reasons. JAYESH claimed that to be a huge success including the launch of his fund Monriva Capital, a platform to raise capital. 30. Per information and belief, according to KAR, Defendant ONRIVA was in business for approximately eight (8) years with no stable market team. Defendant ONRIVA has not delivered on the promises that it has made to its Plaintiffs. 31. Despite repeated requests by KAR, ONRIVA and JAYESH have not provided basic financial diligence materials, such as the GAAP-compliant financial statements. 32. JAYESH initially floated the idea that ONRIVA was going to invest in PROFITPAY which derailed KAR's focus on building the business per a plan that he proposed and even communicated to all the shareholders, such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia.33. Per information and belief, according to PLAINTIFF KAR, the PROFITPAY stocks were sold to investors allegedly at the inflated price of $0.83 per share, and then fell to $0.06 per share. 34. Such investors were, including, but not limited to: Todd Bricker $50,000 Dr Friday CPA $50,000 Balu Patel $100,000 Hinesh Patel $50,000 John Doe 1 $50,000 John Doe 2 $50,000 John Doe 3 $50,000 John Doe 4 $50,000 John Doe 5 $50,000 John Doe 6 $50,000 John Doe 7 $50,000 John Doe 8 $50,000 John Doe 9 $100,000 John Doe 10 $50,000 John Doe 11 $50,000 John Doe 12 $100,000 John Doe 13 $100,000 John Doe 14 $50,000 John Doe 15 $50,000 John Doe 16 $50,000 John Doe 17 $50,000 35. Subsequently, without involving KAR in any negotiation with JAFRI, CEO of ONRIVA, as well as JAYESH e-mailed KAR a draft term sheet with transaction terms while suggesting that ONRIVA would buy the assets for about 660,000 shares each priced at about fifty Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 8 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 9 SECOND-AMENDED COMPLAINT FOR DAMAGES dollars ($50) per share, five (5) times more than the price at the last round of about ten dollars ($10) per share. 36. JAYESH discussed with KAR a few times about

how the shares were to be distributed and KAR prepared and shared a model both with JAYESH and the CFO of Onriva. 37. JAYESH kept KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a year, would go public, and provide five-to-ten times (5-10X) exit to the Plaintiffs at the very least while pointing out to the success of TRIP ACTIONS ( this is about twelve billion ($12 billion) dollar valuation while doing one billion dollars ($1 billion) in revenue.) 38. Following a half-a-day-long meeting in the presence of JAYESH, VIMAL, DEVESH as well as the CEO, CTO, and CFO of ONRIVA and a subsequent meeting with ONRIVA's CTO, KAR started realizing that ONRIVA's revenue was under one million dollars ($1 million) for the year 2022 and may not even be two-to-three million dollars ($2-3 million) in the year 2023 as the Company is going through a leadership crisis in the go to market team. CTO of ONRIVA stated that JAFRI, the CEO do not like to talk about the revenue number but the top line bookings as Sales which to KAR was creating an impression that revenue is 20-30 times higher given the current business model generates four-to-five-percent (4%-5%) of revenue or even less from the airline and hotel bookings. 39. Over the course of the week, KAR was convinced that ONRIVA was simply hiding the truth. Getting financial statements and projections are simple requests in a transaction to establish the value of the receipts. JAYESH shared revenue run rate numbers of Onriva in a WhatsApp message which were overstated by twenty times (20X), not twenty percent (20%.) He further had a 1:1 call with JAYESH to express his concerns about ONRIVA and corrected JAYESH on the revenue numbers. Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 9 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 10 SECOND-AMENDED COMPLAINT FOR DAMAGES 40. Per information and belief, according to KAR, PLAINTIFF KAR was struggling in how a company that just launched in a hyper-competitive travel space with $one to two million dollars in revenue be valued at a thousand (1,000) times the prior year revenue, four-five hundred times (400-500X) the current revenue run rate and possibly three-to-four hundred times (300- 400X) of the achievable revenue for this year while suggesting that this could exit at billions of dollars of valuation through a purchase or acquisition any company on this earth can go public. 41. Per information and belief, according to KAR, DEFENDANT ALINOR/ONRIVA has taken more than forty-five million ($45 million) from approximately four-hundred million ($400 million) Plaintiffs, all the while promising them lucrative exits at absurd returns on investment, from ten to hundred times (10-100X) and is currently using this acquisition to help artificially increase the valuation with no real success in terms or the Company's maturity in products and revenue. 42. Per information and belief, according to KAR, DEFENDANTS JAYESH and ALINOR/ONRIVA have claimed the valuation to increase to at least one billion dollar valuation in the near term for ALINOR/ONRIVA in next few months, with no basis except for the fact that JAFRI is supposed to be putting his own money to his Company at a higher valuation so that they could use that as a basis to raise money at even higher valuation from retail Plaintiffs including sourcing capital by engaging investment bankers. 43. Sophisticated venture capital firms have avoided investing in ONRIVA. Rather, JAYESH and ONRIVA have focused on swindling less sophisticated Plaintiffs. 44. Per information and belief, according to KAR, DEFENDANTS JAYESH and ONRIVA are operating a Ponzi scheme whereby they have continuously sought more and more investment first in PROFITPAY and then in ONRIVA, at higher and higher valuations, in order to provide impatient Plaintiffs an "exit," while continuing to perpetuate the scheme. Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 10 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 11 SECOND-AMENDED COMPLAINT FOR DAMAGES 45. Per information and belief, according to KAR, DEFENDANT VAJID JAFRI, a principal at ONRIVA, has sold his personal shares held in his previous Company Mondee, Inc., to DEFENDANT JAYESH. 46. Per information and belief, according to KAR, subsequently, in lieu of raising thirty-five ($35) million funds from approximately four-hundred million ($400 million), individual Plaintiffs provided JAYESH with significant shares in ONRIVA whereby according to JAYESH he owns now 13% of the Company's shares. 47. JAYESH has used a CAP table with fabricated spreadsheets showing ludicrous $8 billion exit scenarios to induce Plaintiffs to raise capital at PROFITPAY and used hyperinflated financial projections possibilities in the Newsletters to raise capital to ONRIVA, when the company lacks stable corporate governance and lacks assets that would support such a valuation. 48. On April 16, 2023, JAYESH called a Board

meeting wherein he came prepared with other two related Board members to dictate the terms of the acquisition to KAR and have him approve the resolutions without having any discussion whatsoever while denying providing any basic diligence material about ONRIVA such as basic financial statement. 49. On April 18, 2023, JAYESH purportedly caused PROFITPAY to enter into a socalled "Asset Purchase Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY. However, JAYESH fraudulently manipulated the proposed Asset Purchase Agreement in order to acquire PROFITPAY on unduly favorable terms to ONRIVA and himself, while pretending that the shares will be distributed ratably per the Cap table shared with both Onriva and him weeks before, which terms dilute the value of PROFITPAY's other Plaintiffs, including KAR, by 80%. 50. Defendant JAYESH, as a principal of both ONRIVA and PROFITPAY, has attempted to effectuate a highly self-interested transaction, to the detriment of PROFITPAY, its Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 11 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 12 SECOND-AMENDED COMPLAINT FOR DAMAGES Plaintiffs, and such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia, and his fiduciary duty thereto. 51. Defendant JAYESH, and the other board members of PROFITPAY, did not seek approval for the Asset Purchase Agreement from non-conflicted Plaintiffs and/or shareholders of PROFITPAY. 52. Where a transaction between two corporations thereby benefits one corporation at the expense of the other corporation, and especially if it personally benefits majority directors, it should be set aside. Remillard Brick Co. v. Remillard-Dandini Co. (1952) 109 Cal.App.2d 405, 241 P.2d 66. 53. The Asset Purchase Agreement is a conflicted and self-interested transaction that harms PROFITPAY's Plaintiffs, such as PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia; and, that PROFITPAY is intended solely to provide assets to ONRIVA to support JAYESH's ongoing Ponzi scheme at ONRIVA. 54. As such, the Asset Purchase Agreement is void and/or must be set aside. 55. The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents). 56. Subsequently without involving PLAINTIFF KAR, and/or any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10). Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 12 of 28 1 2 3 4 5 6 7 8 9 10 11 12 1 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 13 SECOND-AMENDED COMPLAINT FOR DAMAGES 57. Prior to Defendants JAYESH, DEVESH, and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR there was one vague e-mail to investors and shareholders. 58. There were no terms disclosed to investors and shareholders by Defendants JAYESH, DEVESH, and VIMAL in any kind of public disclosure. 59. There were no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY TECHNOLOGIES, INC. to third-party, ONRIVA/ALINOR/JAFRI by Defendants JAYESH, DEVESH, and VIMAL. 60. There were no executed agreements signed by PLAINTIFF TANMAY KAR. 61. Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR. 62. Initially, when Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders, Defendants JAYESH, DEVESH, and VIMAL allegedly giving them a choice to invest between PROFITPAY, and/or ONRIVA/ALINOR. 63. Per information and belief of Tanmay Kar, some investors, are allegedly filing a lawsuit against Defendants in a different sister jurisdiction, Oklahoma, and/or Tennessee. 64. A class-action may ensue in this, and/or related matters. 65. Based on the negative backlash they may experience, and cultural fear, several investors who are closely-connected with defendants are apprehensive and fearful to be named as class-action members, and prefer to remain anonymous even as intervenors.

**Q: Are you having or have you had difficulty getting access to your funds or securities?**

**A:** Unknown

**Q: Did you suffer a loss?**
**A:** Yes

**Q: Enter amount of loss to nearest dollar without characters (e.g., 15000, not $15,000.00).**
**A:** 2300000

**Q: Is the conduct ongoing?**
**A:** Yes

**Q: Has the individual or firm acknowledged the conduct?**
**A:** Yes

**Q: How did you learn about the conduct? You may select more than one answer.**
**A:** Account statements; Broker-dealer records; Conversations; Internal business documents

**Q: Have you taken any action regarding your complaint? You may select more than one answer.**
**A:** Complained to firm; Complained to law enforcement; Other

**Q: Provide details.**
**A:** I'm the counsel for CEO TANMAY KAR FOR PROFITPAY TECHNOLOGIES. INC. who is against BOARD JAYESH PATEL.

## Who are you complaining about?

**Subject # 1**

**Q: Are you complaining about a person or a firm?**

**A:** Firm

**Q: Select the title that best describes the person or firm that you are complaining about.**

**A:** Other

**Q: Are you or were you associated with the person or firm when the alleged conduct occurred?**

**A:** No

**Q: Identifier Type**

**A:** Unknown

**Q: Are you a current or former Employee, Officer, Partner, or Employee Director of any entity you are complaining about?**

**A:** No

**Q: Are you a current or former Non-Employee Director, Consultant, Contractor or Trustee of any entity you are complaining about?**

**A:** No

**Q: Firm Name**

**A:** LAW OFFICE OF RESHMA KAMATH

**Q: If the complaint is about an entity or person that has custody or control of your investments, have you had difficulty contacting that entity or person?**

**A:** No

## Which investment products are involved?

**Q: Select the type of product involved in your complaint.**

**A:** Equities (e.g., common stock, preferred stock)

**Q: Please select the category that best describes the security product.**

**A:** Other equities

## About you

**Submitter # 1**

**Q: Are you filing this tip under the SEC's whistleblower program?**

**A:** Yes

**Q: Are you an attorney filling out this form on behalf of an anonymous whistleblower client who is seeking an award?**

**A:** Yes

**Q: Attorney First Name**

**A:** RESHMA

**Q: Attorney Last Name**

**A:** KAMATH

**Q: Attorney Firm Name**

**A:** LAW OFFICE OF RESHMA KAMATH

**Q: Attorney Email Address**

**A:** reshmakamath2021@gmail.com

**Q: Has your client reported this matter to his or her supervisor, compliance office, whistleblower hotline, ombudsman, or any other available mechanism for reporting possible violations at any entity that he or she is complaining about?**

**Tips, Complaints, and Referrals**
Summary Page - Submitted Externally

**A:** Yes

**Q: If you answered "Yes," please provide details.**

**A:** See complaint to be attached.

**Q: Has your client been retaliated against for reporting the matter at issue in this submission either internally at the entity or to a regulator?**

**A:** Yes

**Q: Has anyone taken steps to prevent your client from reporting this violation to the SEC?**

**A:** No

**Q: Are documents or other information being submitted that could potentially identify the whistleblower?**

**A:** Yes

**Q: Identify with particularity any documents or other information in your submission that you believe could reasonably be expected to reveal your identity.**

**A:** 33. Per information and belief, according to PLAINTIFF KAR, the PROFITPAY stocks were sold to investors allegedly at the inflated price of $0.83 per share, and then fell to $0.06 per share. 34. Such investors were, including, but not limited to: Todd Bricker $50,000 Dr Friday CPA $50,000 Balu Patel $100,000 Hinesh Patel $50,000 John Doe 1 $50,000 John Doe 2 $50,000 John Doe 3 $50,000 John Doe 4 $50,000 John Doe 5 $50,000 John Doe 6 $50,000 John Doe 7 $50,000 John Doe 8 $50,000 John Doe 9 $100,000 John Doe 10 $50,000 John Doe 11 $50,000 John Doe 12 $100,000 John Doe 13 $100,000 John Doe 14 $50,000 John Doe 15 $50,000 John Doe 16 $50,000 John Doe 17 $50,000 35. Subsequently, without involving KAR in any negotiation with JAFRI, CEO of ONRIVA, as well as JAYESH e-mailed KAR a draft term sheet with transaction terms while suggesting that ONRIVA would buy the assets for about 660,000 shares each priced at about fifty dollars ($50) per share, five (5) times more than the price at the last round of about ten dollars ($10) per share. 36. JAYESH discussed with KAR a few times about how the shares were to be distributed and KAR prepared and shared a model both with JAYESH and the CFO of Onriva. 37. JAYESH kept KAR under the impression that ONRIVA was going to produce $100 million in revenue in less than a year, would go public, and provide five-to-ten times (5-10X) exit to the Plaintiffs at the very least while pointing out to the success of TRIP ACTIONS ( this is about twelve billion ($12 billion) dollar valuation while doing one billion dollars ($1 billion) in revenue.) 38. Following a half-a-day-long meeting in the presence of JAYESH, VIMAL, DEVESH as well as the CEO, CTO, and CFO of ONRIVA and a subsequent meeting with ONRIVA's CTO, KAR started realizing that ONRIVA's revenue was under one million dollars ($1 million) for the year 2022 and may not even be two-to-three million dollars ($2-3 million) in the year 2023 as the Company is going through a leadership crisis in the go to market team. CTO of ONRIVA stated that JAFRI, the CEO do not like to talk about the revenue number but the top line bookings as Sales which to KAR was creating an impression

that revenue is 20-30 times higher given the current business model generates four-to-five-percent (4%-5%) of revenue or even less from the airline and hotel bookings. 39. Over the course of the week, KAR was convinced that ONRIVA was simply hiding the truth. Getting financial statements and projections are simple requests in a transaction to establish the value of the receipts. JAYESH shared revenue run rate numbers of Onriva in a WhatsApp message which were overstated by twenty times (20X), not twenty percent (20%.) He further had a 1:1 call with JAYESH to express his concerns about ONRIVA and corrected JAYESH on the revenue numbers. 40. Per information and belief, according to KAR, PLAINTIFF KAR was struggling in how a company that just launched in a hyper-competitive travel space with $one to two million dollars in revenue be valued at a thousand (1,000) times the prior year revenue, four-five hundred times (400-500X) the current revenue run rate and possibly three-to-four hundred times (300- 400X) of the achievable revenue for this year while suggesting that this could exit at billions of dollars of valuation through a purchase or acquisition any company on this earth can go public. 41. Per information and belief, according to KAR, DEFENDANT ALINOR/ONRIVA has taken more than forty-five million ($45 million) from approximately four-hundred million ($400 million) Plaintiffs, all the while promising them lucrative exits at absurd returns on investment, from ten to hundred times (10-100X) and is currently using this acquisition to help artificially increase the valuation with no real success in terms or the Company's maturity in products and revenue. 42. Per information and belief, according to KAR, DEFENDANTS JAYESH and ALINOR/ONRIVA have claimed the valuation to increase to at least one billion dollar valuation in the near term for ALINOR/ONRIVA in next few months, with no basis except for the fact that JAFRI is supposed to be putting his own money to his Company at a higher valuation so that they could use that as a basis to raise money at even higher valuation from retail Plaintiffs including sourcing capital by engaging investment bankers. 43. Sophisticated venture capital firms have avoided investing in ONRIVA. Rather, JAYESH and ONRIVA have focused on swindling less sophisticated Plaintiffs. 44. Per information and belief, according to KAR, DEFENDANTS JAYESH and ONRIVA are operating a Ponzi scheme whereby they have continuously sought more and more investment first in PROFITPAY and then in ONRIVA, at higher and higher valuations, in order to provide impatient Plaintiffs an "exit," while continuing to perpetuate the scheme. 45. Per information and belief, according to KAR, DEFENDANT VAJID JAFRI, a principal at ONRIVA, has sold his personal shares held in his previous Company Mondee, Inc., to DEFENDANT JAYESH. 46. Per information and belief, according to KAR, subsequently, in lieu of raising thirty-five ($35) million funds from approximately four-hundred million ($400 million), individual Plaintiffs provided JAYESH with significant shares in ONRIVA whereby according to JAYESH he owns now 13% of the Company's shares. 47. JAYESH has used a CAP table with fabricated spreadsheets showing ludicrous $8 billion exit scenarios to induce Plaintiffs to raise capital at PROFITPAY and used hyperinflated financial projections possibilities in the Newsletters to raise capital to ONRIVA, when the company lacks stable corporate governance and lacks assets that would support such a valuation. 48. On April 16, 2023, JAYESH called a Board meeting wherein he came prepared with other two related Board members to dictate the terms of the acquisition to KAR and have him approve the resolutions without having any discussion whatsoever while denying providing any basic diligence material about ONRIVA such as basic financial statement. 49. On April 18, 2023, JAYESH purportedly caused PROFITPAY to enter into a socalled "Asset Purchase Agreement" with ONRIVA, whereby ONRIVA would purportedly acquire the assets of PROFITPAY. However, JAYESH fraudulently manipulated the proposed Asset Purchase Agreement in order to acquire PROFITPAY on unduly favorable terms to ONRIVA and himself, while pretending that the shares will be distributed ratably per the Cap table shared with both Onriva and him weeks before, which terms dilute the value of PROFITPAY's other Plaintiffs, including KAR, by 80%. 50. Defendant JAYESH, as a principal of both ONRIVA and PROFITPAY, has attempted to effectuate a highly self-interested transaction, to the detriment of PROFITPAY, its SECOND-AMENDED COMPLAINT FOR DAMAGES Plaintiffs, and such as the PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia, and his fiduciary duty thereto. 51. Defendant JAYESH, and the other board members of PROFITPAY, did not seek approval for the Asset Purchase Agreement from non-conflicted Plaintiffs and/or shareholders of PROFITPAY. 52. Where a transaction between two corporations thereby benefits

one corporation at the expense of the other corporation, and especially if it personally benefits majority directors, it should be set aside. Remillard Brick Co. v. Remillard-Dandini Co. (1952) 109 Cal.App.2d 405, 241 P.2d 66. 53. The Asset Purchase Agreement is a conflicted and self-interested transaction that harms PROFITPAY's Plaintiffs, such as PLAINTIFFS TANMAY KAR, INVESTORS, SHAREHOLDERS, inter alia; and, that PROFITPAY is intended solely to provide assets to ONRIVA to support JAYESH's ongoing Ponzi scheme at ONRIVA. 54. As such, the Asset Purchase Agreement is void and/or must be set aside. 55. The deliberate and intentional misrepresentations were that stocks would double, triple, and quadruple. Initially, the stocks were sold at an inflated price of $0.83 (eighty-three cents) per stock. However, the price per stock fell to $0.06 (six cents). 56. Subsequently without involving PLAINTIFF KAR, and/or any investors/shareholders, in any negotiations with Defendant JAFRI, CEO of ONRIVA, Defendant JAYESH e-mailed PLAINTIFF KAR a draft term sheet with transaction terms while suggesting that Defendant ONRIVA would buy the assets for about 660,000 shares each priced at about $50 a share, five (5) times more than the price at the last round of about ten dollars ($10). Case 4:23-cv-02064-YGR Document 64 Filed 07/30/23 Page 12 of 28 57. Prior to Defendants JAYESH, DEVESH, and VIMAL's sale to third-party Defendant JAFRI and Defendant ONRIVA/ALINOR there was one vague e-mail to investors and shareholders. 58. There were no terms disclosed to investors and shareholders by Defendants JAYESH, DEVESH, and VIMAL in any kind of public disclosure. 59. There were no shareholder and investor meetings to disclose the sale and purchase of PROFITPAY TECHNOLOGIES, INC. to third-party, ONRIVA/ALINOR/JAFRI by Defendants JAYESH, DEVESH, and VIMAL. 60. There were no executed agreements signed by PLAINTIFF TANMAY KAR. 61. Only a draft agreement existed without signatures purporting a sale of PROFITPAY to ONRIVA/ALINOR. 62. Initially, when Defendants JAYESH, DEVESH, and VIMAL raised capital and monies from investors and shareholders, Defendants JAYESH, DEVESH, and VIMAL allegedly giving them a choice to invest between PROFITPAY, and/or ONRIVA/ALINOR. 63. Per information and belief of Tanmay Kar, some investors, are allegedly filing a lawsuit against Defendants in a different sister jurisdiction, Oklahoma, and/or Tennessee. 64. A class-action may ensue in this, and/or related matters. 65. Based on the negative backlash they may experience, and cultural fear, several investors who are closely-connected with defendants are apprehensive and fearful to be named as

**Q: Does the whistleblower want to be eligible to apply for a whistleblower award?**

**A:** Yes

**Q: 1. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer or employee of the Department of Justice; the Securities and Exchange Commission; the Comptroller of the Currency; the Board of Governors of the Federal Reserve System; the Federal Deposit Insurance Corporation; the Office of Thrift Supervision; the Public Company Accounting Oversight Board; any law enforcement organization; or any national securities exchange, registered securities association, registered clearing agency, or the Municipal Securities Rulemaking Board?**

**A:** No

**Q: 2. Are you, or were you at the time you acquired the original information you are submitting to us, a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority as that term is defined in Section 3(a)(52) of the Securities Exchange Act of 1934 (15 U.S.C. Section 78c(a)(52))?**

**A:** No


**Q: 3. Did you acquire the information being submitted to us through the performance of an engagement required under the federal securities laws by an independent public accountant?**

**A:** No


**Q: 4. Are you providing this information pursuant to a cooperation agreement with the SEC or another agency or organization?**

**A:** No


**Q: 5. Are you a spouse, parent, child, or sibling of a member or employee of the SEC, or do you reside in the same household as a member or employee of the SEC?**

**A:** No


**Q: 6. Have you or anyone representing you received any request, inquiry or demand that relates to the subject matter of your submission (i) from the SEC; (ii) in connection with an investigation, inspection or examination by the Public Company Accounting Oversight Board, or any self-regulatory organization; or (iii) in connection with an investigation by Congress, any other authority of the federal government, or a state Attorney General or securities regulatory authority?**

**A:** No


**Q: 7. Are you currently a subject or target of a criminal investigation, or have you been convicted of a criminal violation, in connection with the information you are submitting to the SEC?**

**A:** No


**Q: 8. Did you acquire the information being provided to us from any person described in Questions 1 through 7?**

**A:** No


**Q: I certify that I have reviewed this form for completeness and accuracy and that the information contained herein is true, correct and complete to the best of my knowledge, information and belief. I further certify that I have verified the identity of the whistleblower on whose behalf this form is being submitted by viewing the whistleblower's valid, unexpired government issued Identification (e.g., driver's license, passport) and**

will retain an original, signed copy of the Form TCR with the declaration signed by the whistleblower, in my records. I further certify that I have obtained the whistleblower's non-waiveable consent to provide the Commission with his or her original signed Form TCR upon request in the event that the Commission requests it due to concerns that the whistleblower may have knowingly and willfully made false, fictitious, or fraudulent statements or representations, or used any false writing or document knowing that the document contains any false, fictitious or fraudulent statement or entry; and that I consent to be legally obligated to do so within 7 calendar days of receiving such a request from the Commission.

**A:** Agree

**Tips, Complaints, and Referrals**
Summary Page - Submitted Externally

## Documents

| Document Name | Document Type |
|---|---|
| show_temp (32).pdf | application/pdf |